UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOHN DOE NO.1; JOHN DOE NO. 2; and NEW
YORK STATE RIFLE AND PISTOL ASSOCIATION,
INC.,

                                    Plaintiffs,

               - against -

PUTNAM COUNTY; and MICHAEL C.
BARTOLOTTI, in his official capacity as County Clerk
for Putnam County,

                                    Defendants,

STATE OF NEW YORK ATTORNEY GENERAL,

                                    Intervenor.

No. 16-CV-8191 (KMK)

**Original Filed By ECF**

---

## MEMORANDUM OF LAW IN SUPPORT OF INTERVENOR
## ATTORNEY GENERAL'S MOTION TO DISMISS THE COMPLAINT

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8426
william.taylor@ag.ny.gov

WILLIAM J. TAYLOR, JR.
Assistant Attorney General
      *Of Counsel*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT .......................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 2

A.   The Challenged Statute: New York Penal Law § 400.00(5)(a) ............................ 2

B.   The Prior State Court Proceeding ......................................................................... 4

C.   The Present Action ................................................................................................. 5

ARGUMENT ....................................................................................................................... 8

I.   ARTICLE III BARS ALL OF PLAINTIFFS' CLAIMS .......................................... 8

A.   Plaintiffs John Doe No. 1 and John Doe No. 2 Lack Standing ............................. 9

 1. John Doe No. 1 Has Not Met His Burden to Show Standing ........................... 10

 2. John Doe No. 2 Has Not Met His Burden to Show Standing ........................... 12

B.   This Action Also Fails on Ripeness Grounds ...................................................... 14

C.   Article III Precludes this Action Because It Is Entirely "Non-Adversarial" ....... 14

II.   PLAINTIFFS HAVE FAILED TO STATE A VIABLE CLAIM ......................... 15

A.   Pleading Standards ............................................................................................... 15

 *Fed. R. Civ. P. 12(b)(6)* ..................................................................................... 15

 *Facial Constitutional Challenges* ..................................................................... 16

B.   Plaintiffs Fail to State a Second Amendment Claim ........................................... 16

 1. *Heller and McDonald* .................................................................................... 16

 2. *Plaintiffs' Second Amendment Claim Fails as a Matter of Law Under the "Two-Step Inquiry" Applied by the Second Circuit* ...................................... 17

C.   Penal Law § 400.00(5)(a) Does Not Violate Plaintiffs' Privacy Rights ............. 21

CONCLUSION........................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amidax Trading Grp. v. S.W.I.F.T. SCRL,*
 671 F.3d 140 (2d Cir. 2011)........................................................................ *passim*

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009)....................................................................................... 15-16

*Azim v. Vance,*
 530 F. App'x 44 (2d Cir. 2013) ...........................................................................9

*Baird v. Perez,*
 No. 98 Civ. 3762 (SAS), 1999 WL 386746 (S.D.N.Y. 1999) .............................22

*Barry v. City of New York,*
 712 F.2d 1554 (2d Cir. 1983)..............................................................................23

*Bell Atl. Corp. v. Twombly,*
 550 U.S. 544 (2007).............................................................................................15

*Carver v. City of New York,*
 621 F.3d 221 (2d Cir. 2010)..................................................................................9

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed
  Care, L.L.C.,*
 433 F.3d 181 (2d Cir. 2005)..................................................................................8

*Citizens United v. Schneiderman,*
 --- F.3d ----, 2018 WL 2018 WL 891276 (2d Cir. Feb. 15, 2018)................... 23-24

*Clapper v. Amnesty Int'l USA,*
 568 U.S. 398 (2013)....................................................................................... *passim*

*Cucchi v. N.Y.C. Off-Track Betting Corp.,*
 818 F. Supp. 647 (S.D.N.Y. 1993)......................................................................22

*Cutshall v. Sundquist,*
 193 F.3d 466 (6th Cir. 1999) ......................................................................... 11-12

*Davis v. Kosinsky,*
 217 F. Supp. 3d 706 (S.D.N.Y. 2016), *aff'd sub nom. Davis v. N.Y. State Bd.
  of Elections,* 689 F. App'x 665 (2d Cir. 2017) ..............................................11, 13

*Davis v. N.Y. State Bd. of Elections,*
 689 F. App'x 665 (2d Cir. 2017) ..................................................................8-9, 14

iii

*District of Columbia v. Heller*,
    554 U.S. 570 (2008)......................................................................................... 16-17

*Eisenbud v. Suffolk Cnty.*,
    841 F.2d 42 (1988)...........................................................................................21, 23

*Encore College Bookstores, Inc. v. Auxiliary Serv. Corp. of State Univ. of N.Y. at Farmingdale*,
    87 N.Y.2d 410 (1995)...............................................................................................20

*Feldheim v. Financial Recovery Servs., Inc.*,
    257 F. Supp. 3d 361 (S.D.N.Y. 2017)........................................................................8

*Firearm Owners Against Crime v. City of Harrisburg*,
    No. 1:15-cv-0332, 2016 WL 1162283 (M.D. Pa. Mar. 24, 2016) ..........................13

*Gannett Satellite Info. Network, Inc. v. Cnty. of Putnam*,
    142 A.D.3d 1012 (2d Dep't 2016) ................................................................... *passim*

*Gannett Satellite Info. Network, Inc. v. Cnty. of Putnam*,
    No. 003564/13, 2014 WL 12577270 (Sup. Ct. Westchester Cnty. Mar. 5,
    2014), *aff'd*, 142 A.D.3d 1012 (2d Dep't 2016) .......................................................4

*Green v. City of Mount Vernon*,
    96 F. Supp. 3d 263, 282 (S.D.N.Y. 2015).................................................................16

*GTE Sylvania, Inc. v. Consumers Union of the United States, Inc.*,
    445 U.S. 375 (1980)............................................................................................10, 16

*Hancock v. Cnty. of Rensselaer*,
    --- F.3d ----, 2018 WL 798471, at *5 (2d Cir. Feb. 9, 2018) ..................................21

*Haynie v. Harris*,
    658 F. App'x 834 (9th Cir. 2016) .............................................................................14

*Herschaft v. N.Y.C. Campaign Finance Bd.*,
    127 F. Supp. 2d 164 (E.D.N.Y. 2000) ......................................................................22

*In re Doe*,
    47 Misc. 3d 328 (Albany City Ct. 2015) ..................................................................13

*INS v. Chadha*,
    462 U.S. 919 (1983)..................................................................................................15

*Johnson ex rel. Johnson v. Columbia Univ.*,
    No. 99 Civ. 3415 (GBD), 2003 WL 22743675 (S.D.N.Y. 2003)..............................22

*Kachalsky v. Cnty. of Westchester,*
    701 F.3d 81 (2d Cir. 2012)..................................................................................*passim*

*Kwong v. Bloomberg,*
    723 F.3d 160 (2d Cir. 2013)....................................................................... 17-18

*Laird v. Tatum,*
    408 U.S. 1 (1972)........................................................................................19

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)........................................................................................8

*Mahon v. Ticor Title Ins. Co.,*
    683 F.3d 59 (2d Cir. 2012)................................................................................8

*McCrory v. Adm'r of Fed. Emergency Mgmt. Agency of U.S. Dep't of Homeland
    Sec.,*
    600 F. App'x 807 (2d Cir. 2015) ........................................................................9

*McDonald v. City of Chicago,*
    561 U.S. 742, 750 (2010)................................................................................17

*Men of Color Helping All Soc'y, Inc. v. City of Buffalo,*
    529 F. App'x 20 (2d Cir. 2013) ........................................................................21

*Miron v. Town of Stratford,*
    976 F. Supp. 2d 120 (D. Conn. 2013)..............................................................21

*Mishtaku v. Espada,*
    669 F. App'x 35 (2d Cir. 2016) ........................................................................18

*Montesa v. Schwartz.,*
    836 F.3d 176 (2d Cir. 2016)..............................................................................8

*N.Y. Times Co. v. City of N.Y. Police Dep't,*
    103 A.D.3d 405 (1st Dep't 2013) ....................................................................24

*NAACP v. State of Ala. ex rel. Patterson,*
    357 U.S. 449 (1958)........................................................................................24

*NASA v. Nelson,*
    562 U.S. 134 (2011)..................................................................................21, 23

*Nat'l Ass'n of Mfrs. v. Taylor,*
    582 F.3d 1 (D.C. Cir. 2009)............................................................................24

*Nat'l Org. for Marriage, Inc. v. Walsh,*
    714 F.3d 682 (2d Cir. 2013)............................................................................14

*NYSRPA v. Cuomo*,
  804 F.3d 242 (2d Cir. 2015), *cert. denied sub nom. Shew v. Malloy*, 136 S. Ct.
  2486 (2016) ................................................................................................ *passim*

*NYSRPA v. City of New York*,
  86 F. Supp. 3d 249 (S.D.N.Y. 2015), *appeal docketed*, No. 15-638
  (2d Cir. argued Aug. 17, 2016) ...................................................................... 18-19

*O'Connor v. Pierson*,
  426 F.3d 187 (2d Cir. 2005).................................................................................22

*O'Shea v. Littleton*,
  414 U.S. 488 (1974)..............................................................................................14

*Panzella v. Cnty. of Nassau*,
  No. 13-CV-5640 (JMA) (SIL), 2015 WL 5607750 (E.D.N.Y. Aug. 26, 2015) ....................19

*Pirozzi v. City of N.Y.*,
  950 F. Supp. 90 (S.D.N.Y. 1996)..........................................................................22

*Robinson v. Sessions*,
  --- F. App'x ----, 2018 WL 456725 (2d Cir. Jan. 18, 2018) ........................ 12-14, 25

*Rose v. Garritt*,
  No. 16-CV-3624 (KMK), 2018 WL 443752 (S.D.N.Y. Jan. 16, 2018) ................................15

*Rutherford v. Katonah-Lewisboro School Dist.*,
  670 F. Supp. 2d 230 (S.D.N.Y. 2009)....................................................................21

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010)............................................................................................ 8-9

*Teixeira v. Cnty. of Alameda*,
  873 F.3d 670 (9th Cir. 2017) (en banc) ...............................................................19

*Thomas v. Pignotti*,
  Nos. 9:17-CV-0300 (GTS/DEP), 9:17-CV-0377 (GTS/ATB), 2017 WL
  39813018 (N.D.N.Y. Sept. 6, 2017) ......................................................................22

*United States v. Chester*,
  628 F.3d 673 (4th Cir. 2010) ...............................................................................19

*United States v. Decastro*,
  682 F.3d 160 (2d Cir. 2012)............................................................................16, 18

*United States v. Focia*,
  869 F.3d 1269 (11th Cir. 2017) ...........................................................................19

*United States v. Lahey*,
    967 F. Supp. 2d 731 (S.D.N.Y. 2013)............................................................. 18-19

*United States v. Santana*,
    761 F. Supp. 2d 131 (S.D.N.Y. 2011)............................................................. 8-9

*United States v. Windsor*,
    133 S. Ct. 2675 (2013)...................................................................................15

*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*,
    549 F.3d 100 (2d Cir. 2008)............................................................................8

*Warth v. Seldin*,
    422 U.S. 490 (1975).........................................................................................8

*Wash. State Grange v. Wash. State Republican Party*,
    552 U.S. 442 (2008)........................................................................................16

*Whalen v. Roe*,
    429 U.S. 589 (1977)..................................................................................21, 23

*Wollschlaeger v. Governor of Fla.*,
    848 F.3d 1293 (11th Cir. 2017) (en banc) .....................................................19

## STATUTES & RULES

28 U.S.C. § 2403(b) ...............................................................................................7

Freedom of Information Law, N.Y. Pub. Off. Law §§ 84-90............................ *passim*

N.Y. Exec. Law § 71 ..............................................................................................7

N.Y. Penal Law
    § 265.00....................................................................................................... 2-3
    § 400.00(5) ................................................................................................ *passim*

Secure Ammunition and Firearms Enforcement Act, 2013 N.Y. Laws, ch. 1 (the
    "SAFE Act")..................................................................................................4

Fed. R. Civ. P. 12(b)(1)................................................................................ *passim*

Fed. R. Civ. P. 12(b)(6)................................................................................ *passim*

## OTHER AUTHORITIES

Michael J. Lambert, Comment, *A Gunman's Paradise: How Louisiana Shields
    Concealed Handgun Permit Holders While Targeting Free Speech and Why
    Other States Should Avoid the Same Mistake*, 75 La. L. Rev. 543, 544, 549-52,
    576-77 (2014).................................................................................................20

Kelsey M. Swanson, Comment, *The Right to Know: An Approach to Gun Licenses and Public Access to Government Records*, 56 UCLA L. Rev. 1579, 1581, 1590, 1614-28 (2009)................................................................................................20

Intervenor Eric T. Schneiderman, as Attorney General of the State of New York (the "Attorney General") respectfully submits this memorandum of law in support of his motion, brought pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Complaint for Declaratory and Injunctive Relief in this action, dated October 19, 2016 (Dkt. No. 1) (the "Complaint"), in its entirety, with prejudice.[1]

## PRELIMINARY STATEMENT

Two individual plaintiffs, John Doe No. 1 and John Doe No. 2, bring this action to challenge the constitutionality of New York Penal Law § 400.00(5)(a), which makes the names and addresses of handgun permit holders a matter of public record, unless one of several statutory exceptions applies. Plaintiffs assert that this statute, on its face, violates their rights under the Second and Fourteenth Amendments.

As plaintiffs have acknowledged, "[t]his case is before the Court in an unusual, non-adversarial posture." (Dkt. No. 36 at 1.) Putnam County, the only defendant, did not oppose plaintiffs' request for a preliminary injunction. (Dkt. No. 24.)

The Attorney General, who has intervened here to defend the constitutionality of the state statute, now moves to dismiss. As demonstrated below, dismissal of this action is fully warranted here both on jurisdictional grounds, under Rule 12(b)(1), and for failure to state a claim, under Rule 12(b)(6).

---

[1] A copy of the Complaint is attached as Exhibit A to the accompanying Declaration of William J. Taylor, Jr., dated February 16, 2018 ("Taylor Decl.").

**STATEMENT OF FACTS**

**A.  The Challenged Statute: New York Penal Law § 400.00(5)(a)**

New York Penal Law § 400.00(5)(a), the statute challenged by plaintiffs in this action, provides that unless one of several statutory exceptions applies, "the name and address of any person to whom an application for any [firearms] license has been granted shall be a public record."  Penal Law § 400.00(5)(a).[2]  This information is kept by licensing officials in the "city or county" where the applicant or licensee resides, and those officials also administer the statutory exceptions to disclosure, which are set forth in Penal Law § 400.00(5)(b).  *Id.*

Firearms license holders and applicants wishing their license information to be kept from public disclosure may elect to do so, identifying the grounds for their claimed exception by checking a box on a form to be submitted at the time that they request a new license or submit a license recertification, or "at any time, including after a license or recertification has been granted."  *Id.* § 400.00(5)(b)-(c), (e)(ii); (Taylor Decl. Ex. B (NYS Firearms License Request for Public Records Exemption Form)).[3]  Some of these exceptions to disclosure are available to certain specified categories of persons, such as active or retired law enforcement officers.  *Id.* § 400.00(5)(b)(i).  Another exception is available to a license holder or applicant who "has reason to believe that his or her life or safety may be endangered by disclosure" and sets forth the reason for that belief.  *Id.* § 400.00(5)(b)(ii).  And there is also a broad exception available to any

---

[2] A "firearm" is defined under New York law to include pistols and revolvers; shotguns with barrels less than eighteen inches in length; rifles with barrels less than sixteen inches in length; "any weapon made from a shotgun or rifle" with an overall length of less than twenty-six inches; and assault weapons.  Penal Law § 265.00(3); *see Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 85 (2d Cir. 2012).  Rifles and shotguns are otherwise not subject to New York's licensing provisions.  Penal Law § 265.00(3); *see Kachalsky*, 701 F.3d at 85.

[3] The information that a license holder or applicant submits on a form requesting such an exception is itself "excepted from disclosure" and must be "maintained by the entity retaining such information separate and apart from all other records."  Penal Law § 400.00(5)(d).

license holder or applicant who "has reason to believe that he or she may be subject to unwarranted harassment upon disclosure of such information." *Id.* § 400.00(5)(b)(iii).[4]

Upon receiving a request for an exception to disclosure, the law provides that the licensing officer —who, in Putnam County, is a local judge, *see id.* § 265.00(10)—"shall grant such exception" and "the application information shall not be public record, unless the request is determined to be null and void." *Id.* § 400.00(5)(b)-(c), (e)(i), (iii).[5]  If the request for an exception is denied as null and void, a firearms license holder or applicant may obtain judicial

---

[4] The grounds for exemption set forth in Penal Law § 400.00(5)(b) are, in full, as follows:

(i)       the applicant's life or safety may be endangered by disclosure because:

(A) the applicant is an active or retired police officer, peace officer, probation officer, parole officer, or corrections officer;

(B) the applicant is a protected person under a currently valid order of protection;

(C) the applicant is or was a witness in a criminal proceeding involving a criminal charge;

(D) the applicant is participating or previously participated as a juror in a criminal proceeding, or is or was a member of a grand jury; or

(E) the applicant is a spouse, domestic partner or household member of a person identified in this subparagraph or subparagraph (ii) of this paragraph, specifying which subparagraph or subparagraphs and clauses apply.

(ii)       the applicant has reason to believe his or her life or safety may be endangered by disclosure due to reasons stated by the applicant.

(iii)       the applicant has reason to believe he or she may be subject to unwarranted harassment upon disclosure of such information.

*Id.* § 400.00(5)(b).

[5]  The statute provides that a request for an exception shall be null and void "upon discovery that an applicant knowingly provided false information" on his or her request form, "provided that written notice containing such determination is provided to the applicant." *Id.* § 400.00(5)(b)-(c).  An applicant who knowingly provides false information under these circumstances also "may be subject to penalties pursuant to [Penal Law §] 175.30," *id.*, which is the misdemeanor offense of offering a false instrument for filing in the second degree.

review of that denial by filing a proceeding under Article 78 of New York's Civil Practice Law and Rules. *Id.* § 400.00(5)(g). No disclosure of an individual's license information may be made while such Article 78 proceeding is pending. *Id.*[6]

### B.    The Prior State Court Proceeding

In October 2013, the defendants here —Putnam County and the Putnam County Clerk (collectively, "Putnam County")—were sued by a local newspaper, The Journal News, after denying the newspaper's request under New York's Freedom of Information Law, Pub. Off. Law §§ 84-90 ("FOIL") for the names and addresses of all firearms license holders residing in Putnam County "who have not properly opted out of disclosure" pursuant to Penal Law § 400.00(5). (Compl. ¶¶ 2, 14-15.)[7] Putnam County had asserted that an exemption from FOIL disclosure was warranted because providing the requested information "would constitute an unwarranted invasion of personal privacy," Pub. Off. Law § 87(2)(b), and "could endanger the life or safety" of the affected licensees, *id.* § 87(2)(f). (Compl. ¶¶ 2, 14-15); *see Gannett Satellite Info. Network, Inc.*, 142 A.D.3d 1012, 1013 (2d Dep't 2016).

In March 2014, a state trial court in Westchester County ruled against Putnam County. (Compl. ¶ 15); *Gannett Satellite Info. Network, Inc.*, 2014 WL 12577270. In September 2016, New York's Appellate Division affirmed. (Compl. ¶ 16); *Gannett Satellite Info. Network, Inc.*,

---

[6] The current version of Penal Law § 400.00(5)(a) was enacted on January 15, 2013, as part of the Secure Ammunition and Firearms Enforcement Act, 2013 N.Y. Laws, ch. 1 (the "SAFE Act"). The SAFE Act strengthened protections from public disclosure under New York law for the information contained in an individual's firearms license application—and, in particular, added the exceptions allowing license holders and applicants to exclude their names and addresses from constituting a "public record." *Id.* § 48.

[7] *See also Gannett Satellite Info. Network, Inc. v. Cnty. of Putnam*, No. 003564/13, 2014 WL 12577270, at *1 (Sup. Ct. Westchester Cnty. Mar. 5, 2014), *aff'd*, 142 A.D.3d 1012 (2d Dep't 2016); Verified Petition, *Gannett Satellite Info. Network, Inc.*, No. 35642013 (Sup. Ct. Westchester Cnty. Oct. 2, 2013), *available at* 2013 WL 12123727.

142 A.D.3d 1012.  The Appellate Division observed that Penal Law § 400.00(5)(a) provides for the names and addresses of handgun permit holders to be public records "presumptively subject to FOIL disclosure."  142 A.D.3d at 1014; (Compl. ¶ 16).  And the Appellate Division concluded that while an exemption from disclosure under FOIL could apply to prevent disclosure, Putnam County had not met its burden of establishing the application of one of the exemptions. 142 A.D.3d at 1016-18; (Compl. ¶ 16).

Putnam County did not seek further review, and the judgment of the Appellate Division has now become final.  (Compl. ¶¶ 2, 16.)  Following the Appellate Division's decision, The Journal News has stated that it is no longer seeking the names and addresses of firearms license holders in Putnam County.  (Order, dated Nov. 13, 2017 (Dkt. No. 45) ("11/13/17 Order") at 4); (Taylor Decl. Ex. C (9/15/16 The Journal News statement).)[8]

C.   **The Present Action**

On October 19, 2016, plaintiffs—two residents of Putnam County and the New York State Rifle and Pistol Association ("NYSRPA")—brought the present action against Putnam County, alleging that Penal Law § 400.00(5)(a)'s public disclosure provision, on its face,

---

[8] As plaintiffs acknowledge (Compl. ¶¶ 1-2, 14), The Journal News sought this information as part of an effort to produce an interactive online map of firearms license holders in Westchester, Rockland, and Putnam Counties. After the Journal News produced a map showing the information it obtained for the other Counties, its offices and staff were subjected to threats that prompted it to hire armed security guards and remove the Westchester and Rockland County information from its website.  (*See, e.g.*, Taylor Decl. Ex. D (1/19/13 N.Y. Times article).) When it filed its lawsuit against Putnam County in October 2013, The Journal News affirmed to the state court that it "d[id] not intend to publish comprehensive lists or maps indicating permit holders' names and addresses," but instead indicated that, at most, "the data may be used for in-house analyses or in specific instances when the publication of the permit status of an individual or location is relevant to a news event, for example, in a case of alleged or proven criminal activity."  Verified Petition, *Gannett Satellite Info. Network, Inc.*, 2013 WL 12123727, ¶ 33.  The Journal News has subsequently stated that it is no longer seeking this information at all. (Taylor Decl. Ex. C.)

"(1) violates the due process right to privacy under the Fourteenth Amendment and

(2) impermissibly chills the free and uninhibited exercise of fundamental Second Amendment

rights."  (Compl. ¶ 3.)  Plaintiffs seek a declaration that Penal Law § 400.00(5)(a) is

unconstitutional, and a preliminary and permanent injunction prohibiting Putnam County from

disclosing the names and addresses of firearms license holders.  (*Id.* at 10.)

Plaintiffs allege that such disclosure may subject them "to unwanted public attention and

censure by those in the community who are hostile to guns and gun owners."  (*Id.* ¶¶ 22, 25.)

Plaintiff John Doe No. 1, a firearms license holder residing in Putnam County, alleges that "he

does not qualify for and has not applied for an exception from disclosure" because "[h]e does not

have reason to believe that his life or safety may be endangered or that he may be subject to

unwarranted harassment if his name and address as a permit holder is addressed publicly."  (*Id.*

¶¶ 20-21.)  Plaintiff John Doe No. 2 alleges he is "a former police officer" who has refrained

from applying for a firearms license out of fear that doing so will make "his name and address as

a handgun permit holder . . . a public record subject to public disclosure under FOIL."  (*Id.* ¶ 25.)

Doe No. 2 claims not to qualify for any exception from disclosure, and asserts he does not have

reason to believe "that he may be subject to unwarranted harassment if his name and address as a

permit holder is disclosed publicly."  (*Id.* ¶ 24.)

Putnam County, the only defendant, did not oppose plaintiffs' request for a preliminary

injunction and "do[es] not intend to take a position with respect to the constitutionality of the

state statute."  (Dkt. No. 24.)  On November 16, 2016, with Putnam County's acquiescence, the

Court granted a temporary preliminary injunction.  (Order Granting Preliminary Injunction,

dated Nov. 16, 2016 (Dkt. No. 33) ("PI Order").)

On October 21, 2016, the Attorney General was served with notice of plaintiffs'

constitutional challenge to Penal Law § 400.00(5)(a).  (Dkt. No. 14.)  On November 16, 2016,

the Court directed the Attorney General to inform the Court whether he intended to intervene to

defend the constitutionality of the statute.  (PI Order.)  On November 30, 2016, the Attorney

General responded to the Court's directive, briefly setting forth his position that "there are

serious jurisdictional obstacles to the Court's consideration of plaintiffs' claims" and informing

the Court that the Attorney General had therefore "decided not to participate at this juncture in

the proceedings."  (Dkt. No. 39 at 1-2.)

In an Order dated November 13, 2017, the Court "preliminarily addresse[d]" the

jurisdictional concerns noted in the Attorney General's November 30, 2016 submission.

(11/13/17 Order.)  The Court concluded, at that early stage, that the John Doe plaintiffs appeared

to have standing and that their claims appeared to be ripe, but that NYSRPA lacked standing.

(*Id.* at 4, 13.)  The Court made clear, however, that this initial ruling was "without prejudice to

any future attempt by the NYAG, if it chooses to intervene, to file a Motion to Dismiss."  (*Id.*)

By letter dated December 1, 2017, the Attorney General sought leave to move, pursuant

to 28 U.S.C. § 2403(b), to intervene in this action for the purposes of defending the

constitutionality of Penal Law § 400.00(5).  *See also* N.Y. Exec. Law § 71.  Plaintiffs did not

oppose and by Order dated December 5, 2017, the Court granted the Attorney General leave to

intervene. (Dkt. No. 49.)

The Court's November 13, 2017 Order leaves John Doe No. 1 and John Doe No. 2 as the

only plaintiffs in this action.  The Attorney General now moves to dismiss the John Doe

plaintiffs' claims, in their entirety, both on jurisdictional grounds, under Rule 12(b)(1), and for

failure to state a claim, under Rule 12(b)(6), for the reasons discussed below.

## ARGUMENT

### I.

### ARTICLE III BARS ALL OF PLAINTIFFS' CLAIMS

Article III of the Constitution limits the subject-matter jurisdiction of the federal courts to "cases" and "controversies."  U.S. Const., art. III, § 2; *see Montesa v. Schwartz.*, 836 F.3d 176, 195 (2d Cir. 2016).  "In order to ensure that this 'bedrock' case-or-controversy requirement is met, courts require that plaintiffs establish their 'standing' as 'the proper part[ies]  to bring' suit."  *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir.  2008) (alteration in original).  As the Supreme Court has explained, standing is "the threshold question in every federal case, determining the power of the court to entertain the suit."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  "If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim."  *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005)).

To satisfy the "irreducible constitutional minimum of standing," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), plaintiffs must demonstrate three elements: "(1) *injury-in-fact*, which is a 'concrete and particularized' harm to a 'legally protected interest'; (2) *causation*  in the form of a 'fairly traceable' connection between the asserted injury-in-fact and the alleged  actions of the defendant; and (3) *redressability*, or a non-speculative likelihood that the injury  can be remedied by the requested relief."  *W.R. Huff*, 549 F.3d at 106-07 (citing *Lujan*, 504 U.S.  at 560-61); *see also, e.g.*, *Feldheim v. Financial Recovery Servs., Inc.*, 257 F. Supp. 3d 361, 369 (S.D.N.Y. 2017).

"Constitutional ripeness is [similarly] concerned with 'Article III limitations on judicial power.'"  *United States v. Santana*, 761 F. Supp. 2d 131, 138 (S.D.N.Y. 2011) (quoting *Stolt-*

*Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 670 n.2 (2010)).  Indeed, as the Second Circuit has stated, ripeness "is best thought of as 'a specific application of the actual injury aspect of Article III standing.'"  *Davis v. N.Y. State Bd. of Elections*, 689 F. App'x 665, 668 (2d Cir. 2017).  And because Article III "limit[s] the business of federal courts to questions presented in an adversary context," it is fundamental that "there is no Art[icle] III case or controversy," and thus the action should be dismissed, "when the parties desire precisely the same result."  *GTE Sylvania, Inc. v. Consumers Union of the United States, Inc.*, 445 U.S. 375, 382 (1980) (internal quotation marks omitted).

Plaintiffs have the burden of establishing these essential requirements of Article III for each plaintiff, as against each defendant, for each claim asserted, and for each type of relief sought.  *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010).  And they must do so "by a preponderance of the evidence," *McCrory v. Adm'r of Fed. Emergency Mgmt. Agency of U.S. Dep't of Homeland Sec.*, 600 F. App'x 807, 808 (2d Cir. 2015), or, at the very least, under "a plausibility standard," *Davis*, 689 F. App'x at 668.  Neither of the remaining plaintiffs—not John Doe No. 1 or John Doe No. 2—has met that burden here.

### A.      Plaintiffs John Doe No. 1 and John Doe No. 2 Lack Standing

In order to have standing to challenge the constitutionality of Penal Law § 400.00(5)(a), and obtain the prospective declaratory and injunctive relief they seek, plaintiffs John Doe No. 1 and John Doe No. 2 bear the burden to show "a likelihood of future harm" to them from enforcement of the challenged statute.  *Azim v. Vance*, 530 F. App'x 44, 45 (2d Cir. 2013); *see, e.g.*, *Carver*, 621 F.3d at 228.  And, as the Supreme Court has made clear, such "threatened injury must be *certainly impending* to constitute injury in fact"; "[a]llegations of *possible* future

injury" are not sufficient.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).  Both

plaintiffs fail to satisfy these Article III requirements.

### 1.   <u>John Doe No. 1 Has Not Met His Burden to Show Standing</u>

John Doe No. 1 alleges that he currently holds a firearms license issued by Putnam

County and that, because of Penal Law § 400.00(5)(a), he fears future public disclosure of his

name and address as a licensee.  (Compl. ¶¶ 20-22.)  He asserts in the Complaint, as well as in an

affidavit he submitted in support of plaintiffs' motion for a preliminary injunction, that "[h]e

believes" such disclosure—if it ever were to occur—would subject him and his family "to

unwanted public attention and censure by those in the community who are hostile to guns and

gun owners."  (*Id*.)  But, at the same time, Doe No. 1 also asserts that "[h]e does not have reason

to believe that his life or safety may be endangered or that he may be subject to unwarranted

harassment if his name or address as a permit holder is disclosed publicly," that he thus does not

believe he qualifies for an exception to disclosure under Penal Law § 400.00(5)(b), and that he

therefore has not applied for one.  (*Id*.)

These allegations are legally insufficient for several reasons. Doe No. 1 presents no facts

indicating any likelihood that his information will in fact be publicly disclosed.  Nor does he

offer facts specifying the "unwanted public attention and censure" he fears or why he fears it.

Nor does he even attempt to explain why this feared "public attention and censure," whatever it

may actually consist of, would not qualify as "unwarranted harassment" for purposes of the

exception at Penal Law § 400.00(5)(b)(iii).  Doe No. 1 offers no facts to support his assumption

that a county clerk would deny him an exemption under that provision—and the availability of a

stay of disclosure pending judicial review of any denial makes his claim even more speculative

and remote. *See* Penal Law § 400(5)(g).  Bald assertions and unsupported conclusions of the type

Doe 1 offers here do not suffice to meet a plaintiff's standing burden. *See, e.g.*, *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146-48 (2d Cir. 2011); *Davis v. Kosinsky*, 217 F. Supp. 3d 706, 708 (S.D.N.Y. 2016), *aff'd sub nom. Davis v. N.Y. State Bd. of Elections*, 689 F. App'x 665 (2d Cir. 2017).

In addition, the standing theory that John Doe No. 1 relies on in this action—that if his name and address as firearms license holder were publicly disclosed, "[h]e believes" he would experience "unwanted public attention and censure"—is premised on precisely the sort of speculative future harm, "highly attenuated chain of possibilities," and "unfettered choices of independent actors before the Court" that do not satisfy the requirements of Article III. *Clapper*, 568 U.S. at 410, 414. For Doe 1 to ever sustain the injury he claims to fear, some person or entity must actually be seeking his information from Putnam County pursuant to FOIL. But no one is. The Journal News, the only potential requestor identified in plaintiffs' Complaint, has completely abandoned its earlier request.[9] And plaintiffs have not pointed to any other possible FOIL requestor here.[10]

The Sixth Circuit's decision in *Cutshall v. Sundquist*, 193 F.3d 466 (6th Cir. 1999), which the Court cited in its November 13, 2017 Order (11/13/17 Order at 7), does not support a different result here. In *Cutshall*, unlike in this case, the information at issue could be published to the public "at any time" at the discretion of state or local law enforcement. 193 F.3d at 471-72. Here, by contrast, there is an opportunity for plaintiffs to opt out of disclosure entirely, a

---

[9] *See supra* note 8.

[10] Notably, Putnam County may still assert FOIL exemptions to prohibit disclosure should anyone seek such disclosure in the future. The court in the related state court proceeding reaffirmed that FOIL exemptions apply. It simply found that Putnam County had, in that particular case against The Journal News, "failed to sustain [its] burden of demonstrating the applicability of the asserted exemptions." *Gannett Satellite Info. Network, Inc.*, 142 A.D.3d at 1016-17.

requirement that someone first make a request for the information, and further protections from disclosure pursuant to New York's Freedom of Information Law.  Doe 1's standing is undercut rather than bolstered by his lack of effort to obtain an exception to disclosure (*see* Compl. ¶¶ 21, 22, 24, 25); *supra* pp. 6, 10-11.  And he has certainly made no showing that Putnam County would deny an exception where a licensee has subjective concerns about the consequences of disclosure.  *See* Penal Law § 400.00(5)(b)(iii).

*Cutshall* is also readily distinguishable because the stigma from public disclosure of plaintiff's sex offender status was clear—unlike  Doe 1's  "self-perceived 'stigma'" from disclosure of his name and address as a firearms license holder, *Robinson v. Sessions*, --- F. App'x ----, 2018 WL 456725, at *3 (2d Cir. Jan. 18, 2018).  And *Cutshall* in any event rests on an outdated assumption that standing is appropriate where a plaintiff would otherwise need to wait until his information was released before bringing suit.  *See* 193 F.3d at 472.  As the Supreme Court has subsequently made clear, that "is not a reason to find standing."  *Clapper*, 568 U.S. at 420-21 (internal quotation marks omitted) (citing cases).

## 2.  John Doe No. 2 Has Not Met His Burden to Show Standing

John Doe 2's allegations of injury are identical to those of John Doe 1 and thus equally vague, conclusory, speculative, and unsupported by facts.[11]  (Compl. ¶¶ 24, 25); *supra* Point I(A)(1).  Moroever, Doe 2's claim of standing is even more attenuated.  Unlike Doe No. 1, he does not hold a firearms license, and has not even applied for such a license.  (Compl. ¶ 25.)  And, while Doe No. 2 asserts that "he satisfies the qualifications established under New York law for obtaining a handgun permit" (*id.* ¶ 23), he offers no particularized factual allegations to

---

[11] Specifically, Doe 2 claims that if he applies for and obtains a firearms license, and if his name and address as a license holder are subsequently disclosed, then such disclosure, "[h]e believes," would subject him to "unwanted public attention and censure."  (Compl. ¶¶ 24, 25.)

support that assertion.  *See, e.g.*, *Amidax*, 671 F.3d at 146-48; *Davis*, 217 F. Supp. 3d at 708.

Doe No. 2 cannot avoid these requirements merely by asserting, without more, that he has refrained from applying for a firearm license because of his unspecified fears of possible future disclosure of his name and address.  (Compl. ¶ 25.)  This is especially so because Doe. No. 2 alleges that he is a former law enforcement officer (*id.* ¶ 23)—a category of person for whom Penal Law § 400.00(5)(b)(1)(A) creates a special exemption from disclosure.  *See In re Doe*, 47 Misc. 3d 328, 329-30 (Albany City Ct. 2015) (applicant did not need to provide any supporting facts beyond her status as the wife of a retired police officer to obtain exception under Penal Law § 400.00(5)(b)(i)(E)).  The Court's earlier decision assumed for the sake of argument "that, for whatever reason, John Doe 2 would not qualify for this or any other exception" (11/13/17 Order at 8 n.2), but the Court was not required to assume the truth of Doe 2's assertion that he does not qualify for any exception from disclosure where the challenged statute provides otherwise on its face, and Doe 2 has offered no particularized factual allegations supporting his assertion.  *See, e.g.*, *Amidax*, 671 F.3d at 146-48; *Davis*, 217 F. Supp. 3d at 708.

In addition, even if Doe 2 could plausibly allege that his fears of disclosure have kept him from seeking a firearm license, his theory of standing would still fail as a matter of law because "[p]laintiffs offer no legal support for application" in the Second Amendment context "of the concept of 'chilling effect' from First Amendment jurisprudence."  *Firearm Owners Against Crime v. City of Harrisburg*, No. 1:15-cv-0332, 2016 WL 1162283, at *6 (M.D. Pa. Mar. 24, 2016) (citing cases); *see infra* p. 19; *see also, e.g.*, *Robinson*, 2018 WL 456725, at *2 n.2 (holding that because plaintiffs "fail to demonstrate that they have been or will imminently be subject to the challenged conduct, their unsubstantiated fears of a speculative harm or a 'chill' on Second Amendment activity are insufficient to confer standing").  And, even if First Amendment

doctrines did apply here, Doe No. 2's allegations of "subjective chill" plainly do not suffice. *Clapper*, 568 U.S. at 418-419; *Robinson*, 2018 WL 456725, at \*2 n.2; *see also Haynie v. Harris*, 658 F. App'x 834, 836 (9th Cir. 2016).  In the absence of any particularized factual allegations supporting Doe No. 2's assertion that he would be granted a firearms license, that the disclosure of his name and address as a license holder is "certainly impending," and that he would face "public attention and censure" (Compl. ¶ 25) from unknown persons, Doe No. 2— like John Doe No. 1—cannot meet his burden of establishing standing.

**B.  This Action Also Fails on Ripeness Grounds**

Plaintiffs' claims also fail on ripeness grounds.  For the reasons already demonstrated, *see supra* Point I(A), each "plaintiff's claimed injury, if any, is not actual or imminent, but instead conjectural or hypothetical," *Davis*, 689 F. App'x at 668 (quoting *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013)) (internal quotation marks omitted).  Thus, the claims are not just barred for lack of standing, but are also "constitutionally unripe." *Id.*

**C.  Article III Precludes this Action Because It Is Entirely "Non-Adversarial"**

Finally, because plaintiffs and Putnam County agree that the names of handgun permit holders should not be released to FOIL requestors, there is no live case or controversy between the parties.  *O'Shea v. Littleton*, 414 U.S. 488, 493-494 (1974).  Article III's case or controversy requirements "limit the business of federal courts to questions presented in an adversary context" and thus "there is no Art[icle] III case or controversy when the parties desire precisely the same result." *GTE Sylvania, Inc.*, 445 U.S. at 382 (quotation marks omitted).

Here, as plaintiffs have acknowledged, "[t]his case is before the Court in an unusual, non-adversarial posture."  (Dkt. No. 36 at 1.)  And unlike the Supreme Court cases relied upon by the Court in its November 13, 2017 Order (*see* 11/13/17 Order at 11-12), this is not a case where

14

despite the parties' agreement as to the legal issues, a live controversy exists because of the effect on the defendant of a self-executing court order. *See, e.g.*, *United States v. Windsor*, 133 S. Ct. 2675, 2685-2686 (2013) (order directing the United States Treasury to pay money); *INS v. Chadha*, 462 U.S. 919, 939-40 (1983) (order directing the INS to deport a foreign national).  For the court order entered against Putnam County in the earlier related state proceedings to have any effect on the County, The Journal News must renew its request for the information that it sued to obtain. (*See* Taylor Decl. Ex. E (11/16/16 Status Conf. Tr.) at 3, 8-9, 18.)  But the Journal News has stated in unequivocal terms that it will not be renewing that request.  (Taylor Decl. Ex. C.)  Accordingly, for this reason as well, dismissal under Rule 12(b)(1) is fully warranted.

## II.

## PLAINTIFFS HAVE FAILED TO STATE A VIABLE CLAIM

Plaintiffs assert that Penal Law § 400.00(5) violates their rights under the Second Amendment as well as their right to privacy.  (Compl. ¶¶ 83-84.)  Plaintiffs' claims are entirely without merit and should be dismissed as a matter of law under Rule 12(b)(6) if this Court were to reach those claims (and it should not for the reasons discussed above in Point I).

### A.     Pleading Standards

### *Fed. R. Civ. P. 12(b)(6)*

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see, e.g.*, *Rose v. Garritt*, No. 16-CV-3624 (KMK), 2018 WL 443752, at *3 (S.D.N.Y. Jan. 16, 2018).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of the cause of action will not do.'"  *Iqbal*, 556 U.S. at 678.  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.*  And, as

this Court has noted, although "[w]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 282 (S.D.N.Y. 2015) (internal quotation marks and citation omitted), "th[at] tenet . . . is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *id.* (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted).

### Facial Constitutional Challenges

Plaintiffs' facial challenge to Penal Law § 400.00(5), *see* (Compl. ¶ 3 & at 10), can succeed only if Plaintiffs "show that 'no set of circumstances exists under which the [statute] would be valid, i.e., that the law is unconstitutional in all of its applications,' or at least that it lacks a 'plainly legitimate sweep,'" *United States v. Decastro,* 682 F.3d 160, 168 (2d Cir. 2012) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008)) (alteration in *Decastro*).  Plaintiffs cannot satisfy this burden.

### B.   Plaintiffs Fail to State a Second Amendment Claim

#### 1.   *Heller and McDonald*

In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court held for the first time that the Second Amendment protects an individual right to keep and bear handguns for lawful purposes, most notably for self-defense within the home.  *Id.* at 595, 599-600, 635.  The Court emphasized, however, that "the right secured by the Second Amendment is not unlimited."  *Id.* at 626.  The Second Amendment does not confer "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."  *Id.*  For example, the Court underscored that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms

in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626-27.  And the Court stressed that it had listed "these presumptively lawful regulatory measures only as examples"; the list was illustrative, "not . . . exhaustive." *Id.* at 627 n.26.

Two years after *Heller*, in *McDonald* v. *City of Chicago*, 561 U.S. 742, 750 (2010), the Supreme Court held that the Second Amendment right recognized in *Heller* applies to the states through the Fourteenth Amendment.  In so doing, the Court reaffirmed *Heller*'s assurances that Second Amendment rights are far from absolute, that the doctrine of "incorporation does not imperil every law regulating firearms," and that "[s]tate and local experimentation with reasonable firearms regulations will continue under the Second Amendment." *Id.* at 786-87.

### 2. *Plaintiffs' Second Amendment Claim Fails as a Matter of Law Under the "Two-Step Inquiry" Applied by the Second Circuit*

The Second Circuit has established a "two-step inquiry" for deciding Second Amendment challenges to firearms regulations.  *NYSRPA v. Cuomo*, 804 F.3d 242, 254 (2d Cir. 2015), *cert. denied sub nom. Shew v. Malloy*, 136 S. Ct. 2486 (2016).  The court must first ask whether the conduct at issue falls within the scope of the Second Amendment right.  *Id.*  If it does, the court then "must determine and apply the appropriate level of scrutiny." *Id.*

Only if the challenged law is found to impose a "substantial burden" on the right to keep and bear arms is "some form of heightened scrutiny" appropriate.  *Id.* at 259 (quoting *Kachalsky*, 701 F.3d at 93).  "[W]here the burden imposed by a regulation on firearms is a 'marginal, incremental or even appreciable restraint on the right to keep and bear arms,' it will not be subject to heightened scrutiny." *Kwong v. Bloomberg*, 723 F.3d 160, 167 (2d Cir. 2013) (quoting *Decastro*, 682 F.3d at 166).  "[H]eightened scrutiny is triggered only by those restrictions that ….operate as a substantial burden on the ability of law-abiding citizens to

17

possess and use a firearm for self-defense (or for other lawful purposes)." *Id.*; *see also NYSRPA*, 804 F.3d at 258–59.  Courts must also look at the degree of the burden imposed by the challenged statute and the availability of adequate alternatives for law-abiding citizens to obtain a firearm for self-defense.  *NYSRPA*, 804 F.3d at 259.  Where a substantial burden is found or assumed, the Second Circuit and courts in this Circuit have applied intermediate scrutiny—under which courts assess whether a law is substantially related to an important government objective—in assessing the constitutionality of the challenged measure.  *See, e.g., Mishtaku v. Espada*, 669 F. App'x 35, 35-36 (2d Cir. 2016); *NYSRPA*, 804 F.3d at 258–59; *Kwong*, 723 F.3d at 168; *Kachalsky*, 701 F.3d at 96-97; *NYSRPA v. City of New York*, 86 F. Supp. 3d 249, 259 (S.D.N.Y. 2015), *appeal docketed*, No. 15-638 (2d Cir. argued Aug. 17, 2016).  Plaintiffs' claims fail as a matter of law under this analysis.

*First*, the challenged statute does not prohibit or prevent plaintiffs from obtaining firearms for self-defense in the home; indeed, Doe No. 1 already possesses and maintains a handgun license (Compl. ¶ 20.) [12] The statute instead provides that absent a decision to opt-out, the name and address of a person who obtains a handgun license in New York State may be subject to public disclosure should someone ask for the same.  Like the federal laws at issue in *DeCastro* and *Kwong*, Penal Law § 400.00(5) thus does not substantially burden the Second Amendment right.[13] And there is no need for heightened scrutiny in the absence of such a burden.

---

[12] For this reason, plaintiffs' facial challenge fails. *See supra* p. 16; *Decastro*, 682 F.3d at 168.

[13] *See Kwong*, 723 F.3d at167 (Second Amendment right not substantially burdened by New York City's firearms "licensing fee, which amounts to just over $100 per year"); *Decastro*, 682 F.3d at 168 (same finding concerning a federal statute that prohibits the transportation of firearms purchased in one state into a citizen's state of residence but "does nothing to keep someone from purchasing a firearm in her home state"); *see also United States v. Lahey*, 967 F. Supp. 2d 731, 752 (S.D.N.Y. 2013) (same finding concerning federal statute criminalizing firearm possession while employed by a prohibited person because the statute "d[id] not restrict

No different conclusion is warranted by plaintiffs' allegation that the public disclosure provisions of Penal Law § 400.00(5)(a) "impermissibly inhibit[]" and "chill[]" their Second Amendment rights (Compl. ¶¶ 3, 38).  To be sure, Doe 2 has alleged that because of unspecified fears of "public attention and censure," he has decided not even to apply for a firearms license. But "[t]he Second Amendment right to own and possess firearms does not preclude questions about, commentary on, or criticism for exercise of that right." *Wollschlaeger v. Governor of Fla.*, 848 F.3d 1293, 1313 (11th Cir. 2017) (en banc).

Indeed, the "chilling effect" that plaintiffs seek to invoke is a feature of First Amendment doctrine. *See Clapper*, 568 U.S. at 417-18 (citing *Laird v. Tatum*, 408 U.S. 1, 10-15 (1972)); *supra* p. 13.  And courts including the Second Circuit have been "hesitant to import *substantive* First Amendment principles wholesale into Second Amendment jurisprudence." *Kachalsky*, 701 F.3d at 91-92. As the Second Circuit has explained, "it would be . . . imprudent to assume that the principles and doctrines developed in connection with the First Amendment apply equally to the Second." *Id; accord NYSRPA*, 804 F.3d at 259.[14]

---

the time, manner, or place of [the employee's] lawful gun possession or use" for his own self-defense).

[14] *See also, e.g.*, *United States v. Chester*, 628 F.3d 673, 688 (4th Cir. 2010) (concluding that the First Amendment overbreadth doctrine—"which is justified on grounds unique to the regulation of expressive conduct" including "the chilling effect of overly broad regulations"—does not apply in the Second Amendment context);*Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 688 (9th Cir. 2017) (en banc) (cataloguing textual and other differences between the First and Second Amendments and rejecting argument that the Second Amendment independently protects rights of commercial gun dealers just as the First Amendment protects bookstores, print shops, and publishers); *United States v. Focia*, 869 F.3d 1269, 1284 (11th Cir. 2017) (collecting decisions from five circuits that "declin[e] to import the First Amendment's prior-restraint framework into an analysis of challenges brought under the Second Amendment," and joining those circuits); *NYSRPA*, 86 F. Supp. 3d at 265 (declining to apply First Amendment doctrine "in the Second Amendment context") (citing cases); *Panzella v. Cnty. of Nassau*, No. 13-CV-5640 (JMA) (SIL), 2015 WL 5607750, at *11 (E.D.N.Y. Aug. 26, 2015) (noting "serious misgivings about applying plaintiff's 'chilling effect' theory to the Second Amendment").

*Second*, even if the Court were to determine that Penal Law § 400.00(5) somehow constitutes a substantial burden on the right of law-abiding citizens to possess firearms for self-defense in the home, that statute would still pass intermediate scrutiny.  *See NYSRPA*, 804 F.3d at 261; *Kachalsky*, 701 F.3d at 96-97; *supra* Point II(B)(2).  As noted, the information potentially available under this statute, *i.e.*, the names and addresses of Doe No. 1, Doe No. 2 (if he applies for and is granted a license), or any other firearms license holder, may be disclosed publicly only pursuant to FOIL.  The purpose of FOIL —"to shed light on government decision-making, which in turn permits the electorate to make informed choices regarding governmental activities," *Encore College Bookstores, Inc. v. Auxiliary Serv. Corp. of State Univ. of N.Y. at Farmingdale*, 87 N.Y.2d 410, 416 (1995); *see* Pub. Off. Law § 84—is indisputably an important one.  Also important is the state law-enforcement interest served by the statute.  For example, in floor discussions of the current version of Penal Law § 400.00(5), one New York legislator noted that "allowing public information enlists the public in the enforcement of statutes" such as New York's SAFE Act.  (*See* Taylor Decl. Ex. F (1/15/13 SAFE Act Assembly Debate) at 109.) Firearms license disclosure laws like New York's have often been used by the press and the public to serve such interest.  (Taylor Decl. Exs. G, H (discussing reporting based upon access to gun permit data through state public records laws, which allows the public to "learn[] about trends, accountability gaps and other potential problems in a state's gun licensing scheme").[15]

---

[15] *See also, e.g.*, Michael J. Lambert, Comment, *A Gunman's Paradise: How Louisiana Shields Concealed Handgun Permit Holders While Targeting Free Speech and Why Other States Should Avoid the Same Mistake*, 75 La. L. Rev. 543, 544, 549-52, 576-77 (2014) (noting important press reporting based on public access to gun records, and arguing against Louisiana's law restricting such access) (Taylor Decl. Ex. I); Kelsey M. Swanson, Comment, *The Right to Know: An Approach to Gun Licenses and Public Access to Government Records*, 56 UCLA L. Rev. 1579, 1581, 1590, 1614-28 (2009) (discussing the policy reasons for public access to firearms license information and why "gun records should be a matter of public record") (Taylor Decl. Ex. J).

For all these reasons, Penal Law § 400.00(5)(a) plainly passes constitutional muster under the Second Amendment.

### C.  Penal Law § 400.00(5)(a) Does Not Violate Plaintiffs' Privacy Rights

Plaintiffs fare no better in their claim that Penal Law § 400.00(5)(a) violates their right to privacy under the Fourteenth Amendment to the United States Constitution.  No legal authority supports their assertion that an individual's decision to exercise his or her "Second Amendment right to armed self-defense in the home is a private, personal matter that is protected from public disclosure by the government under the constitutional right to privacy."  (Compl. ¶ 28.)

"The Supreme Court of the United States has explicitly declined to decide whether there is a 'constitutional privacy interest in avoiding disclosure of personal matters.'"  *Men of Color Helping All Soc'y, Inc. v. City of Buffalo*, 529 F. App'x 20, 25 (2d Cir. 2013) (quoting *NASA v. Nelson*, 562 U.S. 134, 138 (2011)).  And in the Second Circuit, such a right has been found to exist only "in very limited circumstances," *Miron v. Town of Stratford*, 976 F. Supp. 2d 120, 139 (D. Conn. 2013) (citing cases), not present here, involving the state of one's health and certain personal financial information.[16]  One also has an "interest in autonomy when making certain types of important decisions, such as those concerning marriage, procreation, and child rearing." *Rutherford v. Katonah-Lewisboro School Dist.*, 670 F. Supp. 2d 230, 239 (S.D.N.Y. 2009) (citing *Whalen v. Roe*, 429 U.S. 589, 599 (1977)).

There is no support in the case law, however, for extending this right to privacy to the information at issue in this case, *i.e.*, the names and addresses of firearms license holders who

---

[16] *See, e.g.*, *Hancock v. Cnty. of Rensselaer*, --- F.3d ----, 2018 WL 798471, at *5 (2d Cir. Feb. 9, 2018) (right to privacy in medical records); *Eisenbud v. Suffolk Cnty.*, 841 F.2d 42, 45-47 (2d Cir. 1988) (recognizing a right to privacy in the context of financial disclosures, but finding that, because of procedural safeguards, law at issue did not violate that right).

21

have declined to seek an exemption from disclosure but allegedly fear such disclosure. "Constitutional protection 'does not extend to all possible ramifications of privacy.'" *Baird v. Perez*, No. 98 Civ. 3762 (SAS), 1999 WL 386746, at *3 (S.D.N.Y. 1999) (quoting *Travers v. Paton*, 261 F. Supp. 110, 113-14 (D. Conn. 1966)).   For example, courts have found no constitutional right to privacy in "the identities and residential addresses of [a political candidate's] contributors and the amounts they donated," *Herschaft v. N.Y.C. Campaign Finance Bd.*, 127 F. Supp. 2d 164, 171 (E.D.N.Y. 2000); the names, addresses or telephone numbers of a person's family members, *Johnson ex rel. Johnson v. Columbia Univ.*, No. 99 Civ. 3415 (GBD), 2003 WL 22743675, at *10 (S.D.N.Y. 2003); "an individual's criminal history, including arrest records," *Thomas v. Pignotti*, Nos. 9:17-CV-0300 (GTS/DEP), 2017 WL 39813018, at *8 (N.D.N.Y. Sept. 6, 2017) (citing cases); or a person's pregnancy status, *Cucchi v. N.Y.C. Off-Track Betting Corp.*, 818 F. Supp. 647, 655-56 (S.D.N.Y. 1993).[17]

And even if Penal Law § 400.00(5) did implicate a privacy interest of constitutional significance, plaintiffs' claims still fail.   First, as already discussed with respect to plaintiffs' Second Amendment claim, Penal Law § 400.00(5)(a) would survive under the applicable intermediate scrutiny standard.   *See O'Connor v. Pierson*, 426 F.3d 187, 202-03 (2d Cir. 2005) (intermediate scrutiny applies to constitutional privacy claims to state laws); *supra* p. 20.

---

[17] Even if there were a generalized right to informational privacy, the absence of a reasonable expectation of privacy in the information at issue here would undercut it.  Penal Law § 400.00(5)(a) provides that, unless an exception is invoked, the name and address of a firearms licensee becomes "a public record."  John Doe No. 1 sought and was granted a license against this existing statutory background.  And, prior to 2013, the law existed without any exception provisions.  (Compl. ¶ 20); *see supra* note 6.  Under these circumstances, plaintiffs simply cannot plausibly allege the "reasonable expectation of privacy" that is the starting point for any privacy "right." *Johnson*, 2003 WL 22743675, at *11; *see also Pirozzi v. City of N.Y.*, 950 F. Supp. 90, 95 (S.D.N.Y. 1996) (noting that "[t]he reasonableness of a person's expectation depends, in part, upon the relevant statutory restrictions governing disclosure of that information").

Second, as relevant to the privacy context specifically, New York provides constitutionally adequate protections against disclosure and dissemination of firearm licensee information.

The government collects, maintains and disseminates information for many reasons and, so long as adequate protections are put into place to preserve the confidentiality of that information in a given context, a claim based upon an alleged Fourteenth Amendment right to privacy will fail. *Whalen*, 429 U.S. at 605–06 (rejecting Fourteenth Amendment-based privacy challenge to New York's database of prescriptions for dangerous drugs); *NASA*, 562 U.S. at 138, 155 (acknowledging that "government 'accumulation' of 'personal information' for 'public purposes' may pose a threat to privacy," but recognizing that protections against "unwarranted disclosures" to the public "generally allay[] these privacy concerns"); *see also Citizens United v. Schneiderman*, --- F.3d ----, 2018 WL 2018 WL 891276, at *6-7 (2d Cir. Feb. 15, 2018).

As previously noted, Penal Law § 400.00(5) contains several voluntary opt-out provisions, including one for any license holder who "has reason to believe that he or she may be subject to unwarranted harassment upon disclosure of" his or her name and address. *Id.* § 400.00(5)(b)(iii). Eligibility for that opt-out provision is based upon a licensee's subjective belief and, upon election of the opt-out, the county clerk is required to maintain the information as confidential unless and until a request is determined to be "null and void." *Id.* §§ 400.00(5)(d), (e)(i). Under Second Circuit precedent, this should suffice to extinguish any potential privacy claim. *Cf., e.g.*, *Barry v. City of New York*, 712 F.2d 1554, 1561-62 (2d Cir. 1983) (rejecting privacy challenge to financial disclosure law where employee could "make a claim of privacy with respect to any item of information sought by the City by explaining the reasons for the request," and a grant of the request would exclude the information from public disclosure); *Eisenbud*, 841 F.2d at 47 (same).

Further, the information made a "public record" under the section is also protected by exemptions to disclosure under New York's Freedom of Information Law. *See, e.g., N.Y. Times Co. v. City of N.Y. Police Dep't*, 103 A.D.3d 405, 407 (1st Dep't 2013).  Indeed, as noted above, in the related state court action, the court reaffirmed that FOIL exemptions apply and left open the possibility that the Putnam County Clerk could carry his or her burden to sustain one or more such exemptions.  *Gannett Satellite Info. Network, Inc.*, 142 A.D.3d at 1016-17.

Plaintiffs' privacy claim fails for another reason too.  They have not made the type of concrete allegations of harm from disclosure that are needed to state a claim for compelled disclosure of their information.  *See Nat'l Ass'n of Mfrs. v. Taylor*, 582 F.3d 1, 22 (D.C. Cir. 2009) ("*NAM*").  In *NAM*, the court dismissed a constitutional challenge to a law requiring a lobbying organization to disclose its members, allegedly in violation of the First Amendment, even where the organization alleged that its members frequently took unpopular position on "hot button" topics such that disclosure could subject them to negative, financially costly and perhaps even violent repercussions.  The court found that NAM had failed to allege a concrete causal link between past disclosures and specific past incidents of threats, harassment, or reprisals.[18]  Here, even more so than the plaintiff in *NAM*, plaintiffs make only conclusory and unsupported allegations regarding a fear of "unwanted public attention and censure" in the hypothetical event that their names are revealed.  These conclusory allegations are simply not sufficient to state a plausible claim for violation of a right to privacy.  *See also Citizens United*, 2018 WL 891276, at *5, 7.

---

[18] *Cf. NAACP v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 462 (1958) (nullifying on First Amendment grounds a state law requiring disclosure of members where the plaintiff "has made an uncontroverted showing that on past occasions revelation of the identity of its rank-and-file members has exposed these members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility").

In sum, even putting aside their lack of standing to assert a privacy-based claim, *but see Robinson*, 2018 WL 456725, at *2; *supra* Point I, plaintiffs cannot point to a constitutional right to privacy that attaches here, even if they had, they cannot state a claim for violation of that right as there are opportunities for them to opt out of public disclosure of their information and potential defenses to FOIL disclosure that could be asserted.  Penal Law § 400.00(5)(a) survives intermediate scrutiny in any event.  And, further, the absence of any non-conclusory allegations of concrete harm that will result from such disclosure is an alternate and independent basis for dismissal of such claim.[19]

## <u>CONCLUSION</u>

For the foregoing reasons, the Attorney General's motion should be granted, and the Complaint should be dismissed in its entirety.

Dated: New York, New York
           February 16, 2018

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York

By:
/s/ *William J. Taylor, Jr.*
William J. Taylor, Jr.
Assistant Attorney General
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8426
william.taylor@ag.ny.gov

---

[19] Finally, even if plaintiffs had presented a viable constitutional argument against Penal Law § 400.00(5)(a)—which they have not—the proper result would not be for the Court to strike down the statute.  Instead, under the canon of constitutional avoidance, "[a] statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional, but also grave doubts upon that score."  *1256 Hertel Ave. Assocs. v. Calloway*, 761 F.3d 252, 260-61 & n.5 (2d Cir. 2014) (internal quotation marks and citations omitted).  Here, as noted, plaintiffs do not explain why the "unwanted public attention and censure" they allegedly fear would not qualify as "unwarranted harassment" within the meaning of the statute—or why the law should not be construed in this manner before being invalidated as unconstitutional.