UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOHN DOE NO.1; JOHN DOE NO. 2; and NEW
YORK STATE RIFLE AND PISTOL ASSOCIATION,
INC.,

                                        Plaintiffs,

                        - against -

PUTNAM COUNTY; and MICHAEL C.
BARTOLOTTI, in his official capacity as County Clerk
for Putnam County,

                                        Defendants,

STATE OF NEW YORK ATTORNEY GENERAL,

                                        Intervenor.

---

No. 16-CV-8191 (PMH)

**Original Filed By ECF**


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF INTERVENOR
ATTORNEY GENERAL'S MOTION TO PRECLUDE PLAINTIFF'S PROPOSED
EXPERT EVIDENCE PURSUANT TO FED. R. EV. 702 and 703**


LETITIA JAMES
Attorney General of the State of New York
28 Liberty Street
New York, New York 10005
(212) 416-8965
Monica.Connell@ag.ny.gov
Harris.Dague@ag.ny.gov

MONICA CONNELL
HARRIS DAGUE
Assistant Attorney General
     *Of Counsel*

## TABLE OF CONTENTS

Page

**Preliminary Statement**……………………………………………,,,,…………………1

**Argument**……………………………………………………………………………3

I.    **THE COURT MUST DETERMINE ADMISSIBILITY IN ORDER TO CONSIDER EXPERT EVIDENCE ON SUMMARY JUDGMENT, CANNOT ABANDON ITS GATEKEEPING FUNCTION AND NEED NOT ACCEPT EXPERT OPINION BASED ON DATA, A METHODOLOGY, OR STUDIES THAT ARE INADEQUATE TO SUPPORT THE CONCLUSIONS REACHED**……………………......3

II.    **PLAINTIFF'S ARGUMENT THAT A "DIFFERENT AND LOWER" STANDARD APPLIES TO RENDER DR. ENGLISH'S EXPERT OPINIONS ADMISSIBLE IS WITHOUT MERIT**………………….…..……5

III.    **DR. ENGLISH'S OPINIONS ARE UNRELIABLE, BASED UPON ASSUMPTIONS AND SPECULATION AND ARE NOT ADMISSIBLE UNDER DAUBERT AND RULE 702**……………………..............................7

A.  **Plaintiff's "Cost Benefit" Analysis is Based Upon Unreliable Methodology, False Assumptions, Indefensible Omissions, and Speculation**…..………………7

B.  **Dr. English's Legal Opinions, Made Without Any Qualifications, Appropriate Research, or Foundation, Should Be Deemed Inadmissible**………………………………………………………………..9

C.  **Dr. English's Speculation About Injury is Unreliable**………..………………10

**Conclusion**……..……………………………………………………………………11

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256 (2d Cir. 2002)………………………..3

Bee v. Novartis Pharm. Corp., 18 F. Supp. 3d 268 (E.D.N.Y. 2014)…………………………4, 5

Daubert v. Merrell Dow Pharmaceuticals Inc., 509 U.S. 579 (1993)………………………passim

Gen. Elec. Co. v. Joiner, 522 U.S. 136 (1997)………………………………………………1, 3, 4, 5

Houser v. Norfolk S. Ry. Co., 264 F. Supp. 3d 470 (W.D.N.Y. 2017)…………………………..4

In re Puda Coal Sec. Inc., Litig., 30 F. Supp. 3d 230 (S.D.N.Y. 2014)…………………………..6

In re Zyprexa Products Liability Litigation, 489 F. Supp. 2d 230 (E.D.N.Y. 2007)…………...4, 5

Joseph S. v. Hogan, 2011 WL 2848330 (E.D.N.Y. July 15, 2011)………..……………………...4

Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie,
   2015 WL 5459662 (S.D.N.Y. 2015)………………………………………………………..6

Matter of Trusts Established under Pooling & Servicing Agreements
relating to Wachovia Bank Commercial Mortg. Tr. Commercial Mortg.
Pass-Through Certificates, Series 2007-C30,
   2020 WL 1304400, at *18 (S.D.N.Y. Mar. 19, 2020)………..…………………………4, 5

McDonald v. City of Chicago, 561 U.S. 742 (2010)……………………………………………..8

Raskin v. Wyatt Co., 125 F.3d 55 (2d Cir.1997)………..…………………………………...3, 5

Ruggiero v. Warner-Lambert Co., 424 F.3d 249 (2d Cir. 2005)…………………………….3, 4, 5


**Statutes and Rules and Secondary Sources**

Federal Rules of Evidence 702………………………………………………….............passim

Penal Law 400.00…………………,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,…………………………….passim

Caroline Cecot & W. Kip Viscusi, Judicial Review of Agency Benefit-Cost Analysis,
   22 Geo. Mason L. Rev. 575, 592 (2015)…………………………………………………...8

Intervenor Letitia James, as Attorney General of the State of New York ("Intervenor" or "Attorney General") respectfully submits this reply memorandum of law in further support of her motion to preclude the proposed expert evidence submitted by Plaintiff John Doe # 2 ("Plaintiff") in support of his motion for summary judgment.

## Preliminary Statement

In his opposition to Intervenor's Daubert motion, Plaintiff spends much time and effort trying to avoid scrutiny of the opinions and testimony of his expert, Dr. William English. Plaintiff's premier argument is that Intervenor misunderstands the nature of Dr. English's role: *that of a rebuttal expert*. See Dkt. # 125, p.1 (emphasis in original).  In his role as a rebuttal expert, Plaintiff argues, this Court should subject his opinions to a "different and lower" standard of review and admissibility.  Id., p. 4.  Further, Plaintiff argues that at summary judgment and in a bench trial case, assessing admissibility of expert evidence is almost a formality – the Court need not take too close a look at Dr. English's work. Dkt. # 125, p. 3.

But Plaintiff ignores the clear authority, including language in his own cited authorities, that the Court must always assess the admissibility of proposed expert testimony under Daubert and Fed.R.Civ.P. 702 and may only consider admissible evidence on a summary judgment motion. See Point I, infra; Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).   Further, Intervenor has not misapprehended Dr. English's evidence: he offers unsupported opinions that, however labelled, are not rebuttal to Intervenor's experts and must, no matter how Plaintiff struggles to gloss over the point, meet admissibility standards for expert evidence.  See Point II, infra.

Finally, Plaintiff clings to the Intervenor's statement that Dr. English has "impressive credentials" (Dkt.# 125, p.1), but ignores Intervenor's demonstration that Dr. English is a quintessential "ipse dixit" expert: he offers extraordinary opinions which are not supported by his

education, training, work, or, most importantly, the facts of this case and he follows no reliable methodology but instead asserts his opinion as true based upon his say so.   "[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert."  Gen. Elec. Co., 522 U.S. at 146 (upholding district court's exclusion of expert's testimony at summary judgment on basis that studies on which expert relied failed to support his conclusion).

Ultimately, Plaintiff's efforts to rehabilitate Dr. English are unavailing and his opinions should be excluded.  See Point III, infra.  Contrary to Plaintiff's arguments in his opposition, Dr. English clearly offers legal opinions, for which there is no basis and for which he has no training or expertise.  Further, Dr. English performs an unreliable "cost benefit" analysis based upon unsound assumptions, arbitrary selection of facts, and misunderstanding of the law.  Dr. English's assessment that the State's interests are not "important" enough to outweigh the cost to gun owners' privacy until the State can demonstrate that more minors or domestic violence victims have died as a result of handguns than have died from AIDS over the last 30-years is not a creation by Intervenor.  Dr. English's own words demonstrate the bizarre and unreliable nature of his opinions, which should be rejected by this Court.   See Dkt. # 109-6 ("English Dep."), pp. 159-163.  Asked about his analysis, and whether "the State would have to demonstrate that on a national level that more people have died from domestic – just died – from domestic violence and/or unintentional gun deaths of children than how many died from AIDS over the last 30 years to justify this law, is that fair?", Dr, English responded "I would say at least – so this is a – a lower boundary, at least, given our existing legal – yeah."  Id., pp. 162-63.  Under Dr. English's unique approach, almost no public safety laws would pass constitutional muster.

For these and other reasons set forth below, it is respectfully submitted that Dr. English's

proposed expert opinion does not meet the reliability standard under *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993) and Rules 702 and 703 of the Federal Rules of Evidence ("Fed. R. Ev.").

## ARGUMENT

**I.     THE COURT MUST DETERMINE ADMISSIBILITY IN ORDER TO CONSIDER EXPERT EVIDENCE ON SUMMARY JUDGMENT, CANNOT ABANDON ITS GATEKEEPING FUNCTION AND NEED NOT ACCEPT EXPERT OPINION BASED ON DATA, A METHODOLOGY, OR STUDIES THAT ARE INADEQUATE TO SUPPORT THE CONCLUSIONS REACHED.**

Plaintiff proffers expert testimony upon which he asks the court to rely in his summary judgment papers but does not want questions raised as to his expert's qualifications, expertise, methodology or conclusions.  In his opposition, Plaintiff argues at length that the Court need not assess relatability and admissibility of proffered expert evidence when the Court is the trier of fact, as here. But any expert opinion, to be considered at summary judgment or trial, must be admissible under the standard set out in Fed.R.Civ.P. 702 and by the Supreme Court in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).  When deciding a motion for summary judgment, a court may consider only admissible evidence. Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir.1997).

The role of a court assessing expert credentials in non-jury cases is not as straightforward as in jury trial cases but that does not mean that expert admissibility standards don't apply. "[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, Daubert and Rule 702 mandate the exclusion of that unreliable opinion testimony." Ruggiero v. Warner-Lambert Co., 424 F.3d 249, 255 (2d Cir. 2005) quoting Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 266 (2d Cir.2002). "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." Gen. Elec. Co., 522 U.S. at 146.

"Evidence contained in an expert's report therefore must be evaluated under Fed. R. Evid. 702 before it is considered in a ruling on the merits of a summary judgment motion. If a proffer of expert testimony in the form of an expert report is excluded as inadmissible under Rule 702, the summary judgment determination is made on a record that does not include that evidence." Houser v. Norfolk S. Ry. Co., 264 F. Supp. 3d 470, 475 (W.D.N.Y. 2017) (internal citations and quotations omitted). As the Supreme Court and the Second Circuit have repeatedly held, expert evidence may be deemed inadmissible at the summary judgment phase.  See, e.g. Ruggiero, 424 F.3d at 255 (affirming district court's exclusion of expert evidence in decision granting summary judgment for defendant); see also Gen. Elec. Co., 522 U.S. at 137 (upholding district court's exclusion of expert opinion on summary judgment even where decision may be case dispositive).

Plaintiffs argue that English need only meet a lower admissibility standard because he offers only rebuttal opinions [Dkt. #121, p.3].  This is, perhaps, an admission that he cannot met a higher standard, which is addressed in Point II, infra.  But even the cases Plaintiff relies upon concede that any expert opinion must ultimately meet the admissibility thresholds of Rule 702 and Daubert.  See, e.g., Joseph S. v. Hogan, 2011 WL 2848330, at *3 (E.D.N.Y. July 15, 2011)(denying Daubert in limine motion and acknowledging more forgiving standard at a bench trial but stating that "the Court will [not] shirk its responsibility of performing a full Daubert analysis."). For example, in Matter of Trusts Established under Pooling & Servicing Agreements relating to Wachovia Bank Commercial Mortg. Tr. Commercial Mortg. Pass-Through Certificates, Series 2007-C30, 2020 WL 1304400, at *18 (S.D.N.Y. Mar. 19, 2020), a case cited by Plaintiff (Dkt.# 125, p. 2), in ruling on a summary judgment motion, the court held that where it "considers expert testimony in its analysis of the summary judgment motions, it has made the antecedent determination that such evidence satisfies Federal Rule of Evidence 702." See also In re Zyprexa

Prod. Liab. Litig., 489 F. Supp. 2d 230, 284 (E.D.N.Y. 2007) (holding that "[s]ubjective methodology, as well as testimony that is insufficiently connected to the facts of the case," can serve as "grounds for rejection of expert testimony").

"While a district court has 'broad latitude' in deciding both 'how to determine reliability' and in reaching 'its ultimate reliability determination,' it may not abandon its 'gatekeeping function… nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." Matter of Trusts, 2020 WL 1304400, at *46 (internal citations and quotations omitted). "[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, Daubert and Rule 702 mandate the exclusion of that unreliable opinion testimony." Ruggiero, 424 F.3d at 255 (citation omitted).

Courts can and should exclude expert evidence where it fails to meet admissibility standards even at the summary judgment phase and even where such motions are likely "outcome determinative." See, e.g., Gen. Elec. Co., 522 U.S. at 137 (reversing Circuit Court and reinstating district court's exclusion of expert evidence at summary judgment and holding that "the question of admissibility of expert testimony is not such an issue of fact, and is reviewable under the abuse-of-discretion standard."). See also Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir.1997); Bee v. Novartis Pharm. Corp., 18 F. Supp. 3d 268, 299 (E.D.N.Y. 2014).

## II.   PLAINTIFF'S ARGUMENT THAT A "DIFFERENT AND LOWER" STANDARD APPLIES TO RENDER DR. ENGLISH'S EXPERT OPINIONS ADMISSIBLE IS WITHOUT MERIT.

Apparently concerned about the admissibility of his opinions, Plaintiff argues at length that Dr. English need only meet a "different and lower" standard for admissibility of his opinions because Dr. English is "only" offered as a rebuttal expert.  Dkt.# 125, pp. 2-7.  In support of this

proposition, Plaintiff cites <u>Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische</u> <u>Industrie</u>, 2015 WL 5459662, at *12 (S.D.N.Y. 2015) and argues that rebuttal experts are subject to a lower standard where they merely "criticize[] the methodology and/or opinions of another. There is no requirement that a rebuttal expert himself offer a competing analysis". Plaintiff also relies on <u>In re Puda Coal Sec. Inc., Litig.</u>, 30 F. Supp. 3d 230, 252 (S.D.N.Y. 2014), aff'd sub nom <u>Querub v. Hong Kong</u>, 649 F. App'x 55 (2d Cir. 2016), but that case establishes that expert opinions, however defined by a party, are not rebuttal if they do not respond to or rebut an adverse party's evidence or if they support or "are simply a continuation of the plaintiffs case in-chief." <u>Id.</u>  Here, Dr. English offers opinions that do not merely criticize Intervenor's expert evidence. Instead, Dr. English offers his own unique analyses.

Put simply, even if a lower standard invariably applied to all opinions labelled "rebuttal," which is not the case, Dr. English does not confine himself to rebuttal opinions.  His opinions are primarily his own unique analyses which do not rebut Intervenor's expert opinions but instead attempted to support Plaintiff's case in chief. As examples, his report contains the following opinions, which cannot be construed as rebuttal:

- Dr. English opines about the ultimate constitutionality of Penal Law § 400.00(5). Specifically, he offers a unique cost/benefit analysis as his measure of the constitutionality of §400.00(5) – no other expert in this case proposed this theory or applies such an analysis. *This is a unique analysis proffered by Dr. English and is not a rebuttal opinion.*

- Dr. English offers legal opinions about the meaning of "unwarranted harassment" under Penal Law § 400.00(5) *although not in rebuttal to any of Intervenor's experts* and relies upon this opinion for his case in-chief.  <u>See</u> Dkt.# 109-13 ("English Rep."), p. 3; English Dep. pp. 379- 380; Dkt.# 124 (Pls. Counter-Statement in Response to Intervenor's Statement of Material Fact Pursuant to L.R. 56.1), ¶ 72; English Dep., pp 44-48, 49-54. In fact this opinion parrots the identical argument espoused by Plaintiff's counsel two years earlier in the litigation.  See Plaintiff's Memorandum in Opposition to the Motion to Dismiss [Dkt # 64], filed 4/16/18, at p. 9.

- English opines about increasing partisanship and potential negative impacts of partisan beliefs –allegedly exceeding even discrimination based upon race - if knowledge of

firearms ownership were to become public.  English Rep. pp. 5-6.  Plaintiff relies upon this opinion to establish his case.  Dkt.# 124, ¶ 48-51, 134-35.  *But English's opinion on the subject is not in rebuttal to any opinion offered by Intervenor's experts.*

These opinions, and others which do not merely criticize the methodology or reliability of Intervenor's experts, should not be subject to some lower standard for admissibility or, alternatively, they should be excluded as improperly identified as rebuttal.

## III.   DR. ENGLISH'S OPINIONS ARE UNRELIABLE, BASED UPON ASSUMPTIONS AND SPECULATION AND ARE NOT ADMISSIBLE UNDER DAUBERT AND RULE 702.

In the end, Dr. English remains the quintessential "ipse dixit" expert.  Plaintiff posits that Dr. English, while having no particularly relevant expertise, is offered as a rebuttal expert in research methodology.  But he has not even significantly opined about research methodology here. Putting aside his argument that the information conveyed by Penal Law § 400.00(5) would not include those who posses a long gun, illegally possess a handgun or who have exempted themselves under § 400.00(5)(c), a fact acknowledged by Intervenor and Intervenor's experts and requiring no expertise, Dr. English offers little on methodology. And, as noted in Intervenor's moving papers, many of his opinions are undercut by his lack of familiarity with the underlying subject matter or facts.  Further, he has not gained sufficient factual or scientific understanding in relevant fields, or followed reliable methodology, for his opinions to be reliable and admissible.

Three glaring examples, which Plaintiff's opposition does nothing to salvage, are his cost benefit analysis and his legal opinions.

### A.  Plaintiff's "Cost Benefit" Analysis is Based Upon Unreliable Methodology, False Assumptions, Indefensible Omissions, and Speculation.

Faced with Dr. English's disastrous and, unique, opinions and testimony about his "cost benefit" analysis of Penal Law § 400.00(5), Plaintiff now tries to walk back Dr English's statements and argues that "cost benefit" analyses are "de rigeur" in social sciences "for public

policy makers and those who advise them" (Dkt. # 125, p. 16).  Plaintiff cites Caroline Cecot & W. Kip Viscusi, Judicial Review of Agency Benefit-Cost Analysis, 22 Geo. Mason L. Rev. 575, 592 (2015) for this proposition.  But even if that article on agency action were relevant here, Plaintiff ignores the part of the article which addresses the obvious point fact that a reliable cost benefit analysis must "quantif[y] and monetize[] a*ll relevant benefits and costs* of all reasonable alternatives and disclose its methodology."  Id.   This is fatal to Dr. English's analysis.

Plaintiff tries to claim that Dr. English did not set arbitrary parameters for his cost benefit analysis.  But this argument is undone by Dr. English's own words.  When asked directly to define the parameters of opinion, Dr. English unequivocally stated that in his expert opinion, the only way § 400.00(5) could satisfy his version of the cost/benefit analysis and pass constitutional muster is if the law "saved more lives than had died from AIDS over the last 30 years".  English Dep. 159-163.  Plaintiff argues that Intervenor mischaracterizes or misunderstands Dr. English.  But his words and his analysis speak for themselves.  His absurd position bears no connection to either logic, social science, or any applicable constitutional standard.  See McDonald v. City of Chicago, 561 U.S. 742 (2010) (Second Amendment analysis does not "require judges to assess the costs and benefits of firearms restrictions and thus to make difficult empirical judgments in an area in which they lack expertise").

Dr. English's "cost benefit" analysis is deeply flawed and methodologically unsound for other reasons as well.  He fails to consider identified benefits.  For example, without justification, he excludes the prevention of firearms-based physical injuries, maiming, trauma, and threats from his consideration because he views them as less serious than deaths.  English Dep., pp. 145, 146-149.  Dr. English arbitrarily cut off the age ranges considered for child deaths and shootings and limited information he looked at to New York State.  Additionally, Intervenor identified significant

evidence of the public use of firearms licensure information to advance public safety interests.  But in conducting his cost benefit analysis, Dr. English stated that he may have "glanced at" cited articles, studies and an excerpt from relevant legislative history and clearly hardly considered the important public interest in open government in his cost-benefit analysis.  English Dep. 397-98.

Dr. English's assessment of the "costs" of § 400.00(5) doesn't fare much better.  He relies upon mistaken assumptions about the law (<u>see</u> Point, <u>infra</u> III(B)).  For example, although asserting that it is difficult to obtain an exemption, Dr. English did not know whether and how New York had interpreted the exemptions, how one applies for an exemption, who makes the determination, or whether anyone had ever been subject to punishment for making false statements on an application, a harm he considered.  English Dep., pp. 407-08.  Dr. English argues that § 400.00(5) might cause increased robberies and burglaries without having performed even rudimentary research on the same and without any basis for assuming that Penal Law § 400.00(5) would have such effect. English Dep., pp. 199-202. Dr. English opined about the likelihood of anti- licensee discrimination, and economic effects of the law with without any reasonable basis.  English Rep. pp. 2-4.  In fact, he was utterly unfamiliar with the injury alleged by Plaintiff or relevant facts about Plaintiff generally.  <u>See</u> English Dep. pp. 12, 218, 256-57, 415, 420-21, 424-425, 426-27.  And if the "costs" Dr. English posited are associated with the law, then Plaintiff certainly would qualify for an exemption.  Accordingly, English's central opinion- his cost benefit analysis - is untethered to the facts of this case, the relevant law and is based upon assumptions and unreliable information.  It should be rejected.

### 2. Dr. English's Legal Opinions, Made Without Any Qualifications, Appropriate Research, or Foundation, Should Be Deemed Inadmissible.

Perhaps because Dr. English has no formal legal training or basis to offer expert opinions on the law, in his opposition, Plaintiff incredibly asserts that Dr. English "does not offer legal

arguments or opinions about the constitutionality or any other aspect of Section 400.00(5)(a)." Dkt. # 125, p. 18-19.  But this ignores the clear language of Dr. English's report and testimony.

Dr. English offers a legal opinion about the meaning of the term "unwarranted harassment" in § 400.00(5); he opines about the availability (and burden) of obtaining exemptions under the statute; and discusses the "high bar" under the law for government release of personal information. See English Rep. pp. 2, 3; English Dep. pp. 379-380.  Dr. English blatantly states that he is opining on "privacy violations that impinge on the exercise of a fundamental constitutional right." English Rep., p. 8.   These legal opinions and assumptions underpin his "cost benefit" analysis.  His report and testimony are replete with them.  And it can't seriously be debated that Dr. English lacks the education, training, and experience to proffer legal opinions to the Court.  English Dep. pp 44-54, 400-405, 407-08. They must be rejected and, as he relies upon these legal opinions and assumptions for his cost benefit analysis, such analysis is rendered so unsound as to be unreliable.

### 3.    Dr. English's Speculation About Injury is Unreliable.

Dr. English's opinion that § 400.00(5) would make firearms licensees fear stigma and discrimination if their names were made public is unreliable in that Dr. English has no particular expertise in this area, relied upon one cited article on partisan divides and "colloquial conversations" with gun owners, and could not apply the thesis of the study to the facts of Doe's case.  English was unaware that Plaintiff did not articulate any such fears, English had not undertaken any study and had no facts relating to whether such fear would be well founded in Doe's case and as set out in Intervenor's moving papers, there is good reason to believe it would not, and finally, if Plaintiff believed this to be true, he could easily qualify for an exemption under § 400.00(5)(c).  English Dep. pp. 12, 218, 256-57, 256-57, 259-61, 270, 415, 420-21, 424-425, 426-27; Plaintiff's Dep. p. 68, 75-78, 80, 130, 136.

## CONCLUSION

For all the foregoing reasons, and those set forth in prior papers and proceedings had herein.

Defendants respectfully request that this Court grant their motion, and exclude consideration of

Plaintiff's proffered expert evidence in its entirety, along with such other and further relief as the

Court deems just, proper and appropriate.

Dated: New York, New York
      May 10, 2020

                                        Respectfully submitted,
                                        LETITIA JAMES
                                        Attorney General of the State of New York
                                         Intervenor
                              By:

                                        _Monica Connell_
                                        Monica Connell
                                        Special Counsel for
                                        Second Amendment Litigation
                                        28 Liberty Street
                                        New York, New York 10005
                                        (212) 416-8965

MONICA CONNELL
C. HARRIS DAGUE
Assistant Attorneys General
*of counsel*

11