UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN DOE NO. 1, et al.,

            Plaintiffs,

-against-

PUTNAM COUNTY., et al.,

            Defendants,

STATE OF NEW YORK ATTORNEY
GENERAL,

            Intervenor.

**MEMORANDUM OPINION
AND ORDER**

16-CV-08191 (PMH)

PHILIP M. HALPERN, United States District Judge:

      Plaintiffs John Doe No. 1 ("Doe No. 1"), John Doe No. 2 ("Doe No. 2" or "Plaintiff"), and the New York State Rifle and Pistol Association, Inc. ("NYSPRA") initiated this action against Putnam County and the Putnam County Clerk, Michael C. Bartolotti, in his official capacity, on October 19, 2016. (Doc. 1, "Compl."). The Complaint alleged that New York Penal Law § 400.00(5)(a), the provision of New York State's firearm licensing regime which renders a firearm license holder's name and address a matter of public record, is unconstitutional because it: "(1) violates the due process right to privacy under the Fourteenth Amendment[;] and (2) impermissibly chills the free and uninhibited exercise of fundamental Second Amendment rights by subjecting permit holders to unwanted public attention and censure by those . . . opposed to guns and gun owners." (*Id*. ¶ 3). The Complaint pressed two claims for relief: (1) a claim that the statute violates the Fourteenth Amendment's right to privacy; and (2) a claim that the statute chills the Second Amendment right to bear arms. (*Id*. ¶¶ 28-39).

      By Order dated November 13, 2017, Judge Karas dismissed the NYSPRA for lack of standing. (Doc. 45). Less than one month later, Judge Karas granted the New York State Office of

the Attorney General's ("NYSOAG") unopposed motion to intervene in this action to, *inter alia*, defend the constitutionality of the subject state law. (Doc. 49). Shortly thereafter, the NYSOAG filed a motion to dismiss the action; Doe No. 1 and Doe No. 2 opposed that motion. (*See, e.g.*, Docs. 57-59, 64, 72).[1] On September 29, 2018, Judge Karas filed an Opinion & Order that granted in part the NYSOAG's motion to dismiss. (Doc. 73, "Op. & Ord."). Specifically, Judge Karas concluded that no claim for relief under the Fourteenth Amendment's right to privacy existed and that Doe No. 1 lacked standing to bring a claim for relief under the Second Amendment.[2] (*Id*. at 16, 31-34). The only claim that remained following that decision—and, consequently, remains pending now—is Plaintiff's second claim for relief.

Following the close of discovery, at a conference on November 14, 2019, Judge Karas set an initial briefing schedule for the parties' anticipated motions. (Doc. 95). Following various adjustments to the briefing schedules: (1) the parties filed competing motions for summary judgment; and (2) the NYSOAG filed a motion to preclude the report and opinions of Plaintiff's proposed expert, William English, Ph.D. Plaintiff filed his motion for summary judgment on January 27, 2020. (*See* Doc. 98; Doc. 99, "Pl. Br."). On March 16, 2020, the NYSOAG filed its motion for summary judgment and its opposition to Plaintiff's motion for summary judgment in a single brief. (*See* Doc. 107; Doc. 108, "AG Br."). That same day, the NYSOAG filed its motion to preclude consideration of Dr. English's report and opinions. (*See* Doc. 115; Doc. 116). On April 16, 2020, this action and the pending motions were reassigned to me. On April 27, 2020, Plaintiff's motion for summary judgment was fully briefed with the filing of his combined brief in further

---

[1] Neither Putnam County nor Bartolotti have taken a position with respect to the constitutionality of the subject statute. (*See* Doc. 24). Moreover, those parties have not filed papers with respect to the pending motions.

[2] The Court presumes the parties' familiarity with Judge Karas' thorough and detailed September 29, 2018 Opinion & Order.

support of *his* motion to dismiss and in opposition to the *NYSOAG*'s motion for summary judgment. (*See* Doc. 121, "Pl. Reply"). That same day, Plaintiff filed his opposition to the NYSOAG's motion to preclude Dr. English's report and opinions. (*See* Doc. 125). All motions were fully briefed on May 11, 2020 when the NYSOAG filed its reply brief in further support of its motion for summary judgment (Doc. 128, "AG Reply") and its reply brief in further support of its motion regarding Dr. English (Doc. 129).

As such, presently before the Court for adjudication are: (1) Plaintiff's motion for summary judgment (Doc. 98); (2) the NYSOAG's motion for summary judgment (Doc. 107); and (3) the NYSOAG's motion to preclude the report and opinions of Dr. English (Doc. 115).[3]

For the reasons set forth below, all three motions are DENIED without prejudice.

## BACKGROUND

I. The New York State Firearm Licensing Regime

Under New York State law, a "firearm" is defined in pertinent part as follows:

> "Firearm" means (a) any pistol or revolver; or (b) a shotgun having one or more barrels less than eighteen inches in length; or (c) a rifle having one or more barrels less than sixteen inches in length; or (d) any weapon made from a shotgun or rifle whether by alteration,

---

[3] At this stage, the Court is permitted to consider undisputed facts contained in the Plaintiff's Counterstatement of Material Facts Pursuant to Local Rule 56.1 (Doc. 124, "Pl. 56.1 Opp.") and the admissible materials properly incorporated therein. As repeatedly set forth in the NYSOAG's Counterstatement of Material Facts Pursuant to Local Rule 56.1, the Court notes the NYSOAG's objections that the exhibits filed by Plaintiff—as attachments to Plaintiff's 56.1 Statement of Material Facts—cannot be considered by this Court because they are not in admissible form. (*See generally*, Doc. 114, "AG 56.1 Opp."). This is a proper objection based upon a well-established rule in this District. *See* Fed. R. Civ. P. 56(c)(4); *U.S. Bank Tr., N.A. v. Dingman*, No. 16-CV-1384, 2016 WL 6902480, at *1 n.1 (S.D.N.Y. Nov. 22, 2016) (parties are required "to cite to admissible evidence following each statement of material fact"); *G.C.W. by Rivera v. United States*, No. 15-CV-294, 2017 WL 933098, at *5 n.10 (S.D.N.Y. Mar. 8, 2017) ("There is no provision for filing freestanding exhibits unmoored to an affidavit or declaration made on personal knowledge." (quoting *Spears v. City of New York*, No. 10-CV-3461, 2012 WL 4793541, at *1 n.2 (E.D.N.Y. Oct. 9, 2012)). The Court notes that Plaintiff sought to remedy this particular issue by filing a declaration and that the NYSOAG did not oppose Plaintiff's intended correction. (*See* Doc. 122). Nevertheless, this particular issue is academic because the facts necessary for adjudication at this moment are contained in the transcript of Plaintiff's deposition submitted properly, in its entirety and in admissible form, by the NYSOAG. (*See* Doc. 109-8, "Doe No. 2 Dep.").

>modification, or otherwise if such weapon as altered, modified, or otherwise has an overall length of less than twenty-six inches; or (e) an assault weapon.

N.Y. Penal Law § 265.00(3).[4] As the Second Circuit has recognized, "Section 400.00 of the Penal Law is the exclusive statutory mechanism for the licensing of firearms in New York State." *Kachalsky v. Cty. of Westchester*, 701 F.3d 81, 85 (2d Cir. 2012) (internal quotation marks omitted). "Licenses are limited to those over twenty-one years of age, of good moral character, without a history of crime or mental illness, and 'concerning whom no good cause exists for the denial of a license.'" *Id.* at 86 (citing N.Y. Penal Law §§ 400.00(1)(a)-(d), (g)).

As is pertinent to the present dispute, N.Y. Penal Law § 400.00(5)(a) provides that "[e]xcept as provided in paragraphs (b) through (f) of this subdivision, the name and address of any person to whom an application for any license has been granted shall be public record." Insofar as seeking an exception preventing one's name and address from being disclosed, at the time that the individual applies for a firearms license, each is given a form which provides "an opportunity for the applicant to request an exception from his or her application information becoming public record pursuant to paragraph (a) of this subdivision." N.Y. Penal Law § 400.00(5)(b). By the language of the statute, "knowingly provid[ing] false information" on that form exposes the individual "to penalties pursuant to section 175.30 of this chapter, and further, that his or her request for an exception shall be null and void, provided that written notice containing such determination is provided to the applicant." *Id.* "[S]ection 175.30 of this chapter" refers to the crime of Offering a False Instrument for Filing in the Second Degree, a Class A Misdemeanor in New York State. N.Y. Penal Law § 175.30.

---

[4] As Judge Karas acknowledged, if a "[r]ifle[] or [a] shotgun[]" does not meet the definition of "firearm" provided by N.Y. Penal Law § 265.00(3), it is not otherwise subject to licensing regulations in New York State. (Op. & Ord. at 2 n.2).

4

The exceptions to public disclosure of a license holder's name and address are "identified on the application with a box beside each for checking, as applicable, by the applicant . . . ." N.Y. Penal Law § 400.00(5)(b). Those exceptions are:

> (i) the applicant's life or safety may be endangered by disclosure because:
>
>> (A) the applicant is an active or retired police officer, peace officer, probation officer, parole officer, or corrections officer;
>>
>> (B) the applicant is a protected person under a currently valid order of protection;
>>
>> (C) the applicant is or was a witness in a criminal proceeding involving a criminal charge;
>>
>> (D) the applicant is participating or previously participated as a juror in a criminal proceeding, or is or was a member of a grand jury; or
>>
>> (E) the applicant is a spouse, domestic partner or household member of a person identified in this subparagraph or subparagraph (ii) of this paragraph, specifying which subparagraph or subparagraphs and clauses apply.
>
> (ii) the applicant has reason to believe his or her life or safety may be endangered by disclosure due to reasons stated by the applicant.
>
> (iii) the applicant has reason to believe he or she may be subject to unwarranted harassment upon disclosure of such information.

N.Y. Penal Law §§ 400.00(5)(b)(i)-(iii).

The gravamen of this statutory scheme may be stated succinctly: (1) by seeking to procure a firearms license in accordance with the statute, the name and address of the applicant is, by operation of law, rendered a matter of public record; (2) an applicant's name and address can be removed from the public record only if he or she seeks—and is granted—one of the above-cited exceptions; and (3) an applicant may only seek an exception in good faith, and if the applicant provides "knowingly false" information to secure the exception, he or she may be prosecuted for committing a Class A Misdemeanor. It is in this statutory context which the present dispute exists.

II.    <u>Plaintiff Maintains That He Does Not Qualify for an Exception</u>

Plaintiff, a resident of Putnam County, New York, testified that he has served as a Police Officer in the New York City Police Department and as a Chief Petty Officer in the United States Coast Guard. (*See* Doe No. 2 Dep. at 10:10-25, 35:15-41:12, 44:24-45:6; *see also* AG 56.1 Opp. ¶¶ 1-3 (AG admitting, notwithstanding its objection to admissibility, these facts)). Plaintiff explained that he wanted to own a handgun and that he looked into the process of securing a license, but that he decided not to "go through all of that process" because he was "worried about" his name and address being a matter of public record. (Doe No. 2 Dep. at 74:23-76:15, 82:10-84:15). Plaintiff stated that he did not believe he qualified for any exception listed. (*See id*. at 106:14-18, 109:8-124:15). As a former police officer, Plaintiff does not believe that his "life or safety may be endangered by disclosure" of his status as a gun license holder. (*See id*. at 109:8-111:17). Rather, Plaintiff expounded that his specific fear was that if he were granted a firearms license and his name and address were made a matter of public record that he and his family would be "ostracized" by the community, and that they would be excluded from participating in social groups or "groups of people." (*Id*. at 78:23-82:8).[5] When pressed to explain what specific actions he feared from members of his community, whether he feared affirmative actions being taken against him, Plaintiff explained:

> I would clarify it more as a way you are treated. I don't think anybody would take any certain action, other than, like I say, maybe ostracizing you from a different event or organization or in a circle of [sic] groups of people.

(*Id*. at 82:3-8). Plaintiff affirmed that he did not fear active conduct such as physical, criminal harassment toward him, but rather a change of the attitude toward him and his social status in the

---

[5] Notably, Plaintiff alleged that he did not believe he "face[d] specific threats" but that disclosing his name and address would subject him "to unwanted public attention and censure by those in the community who are opposed to guns and gun owners." (Compl. ¶¶ 3, 24-25, 37).

6

community, noting that he did not "feel anybody is going to come and follow me around in public and hold up signs and harass me just because my name is publicly disclosed as a gun owner." (*Id*. at 124:5-15).

Although Plaintiff testified that he believed none of the exceptions available under N.Y. Penal Law § 400.00(5)(b) apply to his particular situation (*id*. at 106:14-18; 109:8-124:15), the NYSOAG counters that the socially stigmatizing passive conduct that Plaintiff claims to fear—that he would be ostracized, that his wife would be shut out of her garden club, and that people in the community would look at Doe No. 2 and his family negatively—is precisely the type of conduct encompassed within the "catchall" provision created by the "unwarranted harassment" exception in N.Y. Penal Law § 400.00(5)(b)(iii). (*See generally* AG Br. at 12-18; AG Reply at 3-7). The difference in the positions revolves around the definition of the phrase "unwarranted harassment." Plaintiff testified and argues that the phrase "unwarranted harassment" references the crime of harassment as defined by the New York State Penal Law. (*See* Doe No. 2 Dep. at 123:10-124:5; Pl. Br. at 9-10, 21-22; Pl. Reply at 5-6). As Plaintiff concedes, if the NYSOAG is correct and "if the Court were to interpret the statutory term 'harassment' in Section 400.00(5)(b)(iii) broadly enough to encompass the social stigma—the shunning—that Doe [No.] 2 fears, then [the] constitutional challenge would indeed go away." (Pl. Reply at 5). The fundamental issues to be decided, then, are what, precisely the phrase "unwarranted harassment" means and whether it encompasses the conduct Plaintiff claims to fear should his name and address be publicly available.

7

## **STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, 442 F. Supp. 3d 714, 722 (S.D.N.Y. 2020) (quoting *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-5486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id*. (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). The task is material issue spotting not material issue determining. *See Glover v. Austin*, 289 F. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New York*, 74 F. App'x 146, 148 (2d Cir. 2003) (concluding that because the plaintiff "failed to raise an issue of material fact with respect to an essential element of her . . . claim, the District Court properly granted summary judgment dismissing that claim").

Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial . . . ." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).  The Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id*. (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 442 F. Supp. 3d at 722 (quoting *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts . . .." *Id*. (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)).  However, "[i]f there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

"Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. Simply put, the movant must establish that the law favors the judgment sought." *Wheeler v. Kolek*, No. 16-CV-7441, 2020 WL 6726947, at *4 (S.D.N.Y. Nov. 16, 2020).

## **ANALYSIS**

A review of the parties' motions and the admissible evidence offered in support thereof reveals that this Court can neither grant nor deny either party's motion for summary judgment at this time. It is clear to the Court with the benefit of discovery, including Plaintiff's deposition, that the determination of the threshold issue—Plaintiff's standing to maintain this federal action—turns on an interpretation of uncertain state statutory language that has yet to be interpreted by the New

9

York State courts. Any summary judgment determination, with the issue of standing up in the air, would be both advisory and speculative because an actual Second Amendment case or controversy may, or may not exist here.

At every stage of the litigation, a plaintiff bears the burden of establishing his standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411-12 (2013). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice . . . . In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (internal citations and quotation marks omitted). "[T]he standing issue 'may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment.'" *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006)).

At this summary judgment stage of the litigation, the Court is unable to determine whether Plaintiff does, in fact, have standing to maintain this action. This is not to say that Plaintiff must apply for a firearms license in New York to establish his standing. Rather, as Judge Karas explained in his decision on the NYSOAG's motion to dismiss, an exception to the rule that a plaintiff lacks standing to challenge New York State's firearm licensing laws if he fails to apply for a firearms license in New York, exists if "he makes a 'substantial showing' that his application 'would have been futile.'" (Op. & Ord. at 16-17 (quoting *United States v. Decastro*, 682 F.3d 160, 164 (2d Cir. 2012) (internal quotation marks omitted)). Whether Plaintiff has demonstrated such a "substantial showing" of futility at summary judgment turns on an unsettled question of state law,

10

warranting the Court's abstention from exercising jurisdiction at this time. *See R.R. Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941).

Plaintiff alleges that he is ineligible for the "unwarranted harassment" exemption pursuant to N.Y. Penal Law § 400.00(5)(b)(iii) while relying on shifting definitions of the phrase. (*Compare, e.g.*, Pl. Br. at 22 (arguing that the word "harassment" refers to the crime defined in New York Penal Law), *with* Pl. Reply at 5 (arguing that "harassment," as defined by dictionaries, cannot include negative conduct such as avoidance or "shunning"); *see also* Compl. ¶ 24 (claiming that Plaintiff does not fear "unwarranted harassment" because he "does not face specific threats")).

The NYSOAG maintains that the context and structure of the statute, and the colloquial and common sense meaning of the words used therein, supports a definition that would embrace the conduct Plaintiff claims to fear. (*See* AG Br. at 13-15). Citing to the Cambridge Dictionary, the NYSOAG explains that the definition of "harassment" is "behavior that annoys or upsets someone"; and that "unwarranted" is "not having a good reason and therefore annoying or unfair." Thus, the NYSOAG maintains that the statute can be read reasonably to except "baseless behavior that annoys or upsets someone." (*Id*. at 15). The NYSOAG argues further that its proposed construction comports with the other provisions of the N.Y. Penal Law, thus promoting harmony with the rest of the law. (*Id*. at 16-17).

Should Plaintiff, in fact, qualify for the "unwarranted harassment" exception, he experiences no injury from the statute he seeks to challenge because his gun permit privacy would be maintained, and therefore lacks standing to maintain this action. Plaintiff concedes as much on this motion. (Pl. Reply at 5 (admitting that the constitutional claim "would indeed go away" if N.Y. Penal Law § 400.00(5)(b)(iii)'s "unwarranted harassment" clause is interpreted as the NYSOAG proffers)). Thus, Plaintiff's standing, having completed discovery and based upon the

11

undisputed facts on this record, hinges on the definition of "unwarranted harassment" contained in the statute.

*Pullman* abstention is appropriate "when difficult and unsettled questions of state law must be resolved before a substantial federal or constitutional question can be decided." *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984). *Pullman* abstention is "[i]ntended to further the harmonious relation between state and federal courts" by allowing a federal court to abstain from deciding difficult and "unsettled questions of state law that are antecedent to federal constitutional questions." *Tunick v. Safir*, 209 F.3d 67, 74 (2d Cir. 2000) (internal citations and quotation marks omitted); *see also Vermont Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 384 (2d Cir. 2000). Once the federal court has abstained, "the parties may seek a controlling interpretation of the challenged law from the state courts, whose decision could cause the federal constitutional question to disappear altogether." *Expressions Hair Design v. Schneiderman*, 808 F.3d 118, 137 (2d Cir. 2015). *Pullman* gives the state courts the opportunity to construe ambiguous issues of state law in a manner "that would avoid or modify the constitutional question." *Zwickler v. Koota*, 389 U.S. 241, 249 (1967). Indeed, "abstention is appropriate where an unconstrued state statute is susceptible of a construction by the state judiciary which might avoid in whole or in part the necessity for federal constitutional adjudication . . . ." *Bellotti v. Baird*, 428 U.S. 132, 146-47 (1976) (internal quotation marks omitted). Thus, "*Pullman* abstention allows federal courts to avoid both '(a) premature decisions on questions of federal constitutional law, and (b) erroneous rulings with respect to state law.'" *Expressions*, 808 F.3d at 137 (quoting *Allstate Ins. Co. v. Serio*, 261 F.3d 143, 150 (2d Cir. 2001)); *Tunick*, 209 F.3d at 74 (quoting *Pullman*, 312 U.S. at 498-99).

The Second Circuit has specified three conditions that must be satisfied before federal courts may invoke *Pullman* abstention: (1) "that the state statute be unclear or the issue of state

12

law be uncertain;" (2) "that resolution of the federal issue depend[s] upon the interpretation" of state law; and (3) "that the state law be susceptible of an interpretation that would avoid or modify the federal constitutional issue." *McRedmond v. Wilson*, 533 F.2d 757, 761 (2d Cir. 1976). These conditions, as discussed *infra*, have been satisfied here, thus warranting the Court's abstention.

With respect to the first condition, it is not at all clear what the phrase "unwarranted harassment" means under the New York statute. The phrase is not defined; Plaintiff claims that it means criminal harassment in the first or second degrees in other areas of N.Y. Penal Law (Pl. Br. at 22), while the NYSOAG maintains that the phrase is a catchall, for "baseless behavior that annoys or upsets someone" (AG Br. at 15). Because the statutory provisions do not address the meaning of the phrase "unwarranted harassment," the state law question dictating Plaintiff's standing in this action "remains unclear." *See Catlin v. Ambach*, 820 F.2d 588, 591 (2d Cir. 1987). Moreover, the law has not been interpreted by New York State courts, *Onondaga Landfill Sys., Inc. v. Williams*, 624 F. Supp. 25, 29 (N.D.N.Y. 1985), and the legislative history is silent as to this uncertain issue.[6]

With respect to the second condition, resolution of the meaning of the phrase is required prior to any resolution of this action; the question of state law must be answered before the issue of whether state law violates the constitution even arises. Should the state court finally determine that the definition urged by the NYSOAG is correct, then Plaintiff—by his own admission—would not have standing to maintain this action. In order for Plaintiff to maintain this action, short of applying for a firearms license and seeking the protection of the exception to which he believes he is not entitled, he must make a "substantial showing" that his application "would have been futile."

---

[6] Although legislative history is "unreliable" as "a predictor of judicial construction," *Wisconsin Pub. Intervenor v. Mortier*, 501 U.S. 597, 617 (1991) (Scalia, J., concurring), in the interests of completeness, the Court reviewed the statute's legislative history and found no indication of the intended interpretation of the phrase "unwarranted harassment."

13

(*See* Op. & Ord. at 16-17; *Decastro*, 682 F.3d at 164). This, Plaintiff can satisfy only if the facts alleged and established demonstrate that the conduct he fears is not embraced by the statutory language at issue. Should the New York State courts finally determine that the meaning of "unwarranted harassment" is in fact akin to the conduct Plaintiff fears, then he would be entitled to claim the exception, his name and address would not be publicly accessible, and he would therefore lack standing to press this action. Thus, "the state law issue[] [is] logically preliminary to the federal constitutional issue." *Weiser v. Koch*, 632 F. Supp. 1369, 1383 (S.D.N.Y. 1986).

Finally, with respect to the third condition, the statutory provision in question is susceptible to an interpretation that would avoid the federal constitutional issue. The definition of "unwarranted harassment" could be interpreted to encompass the "annoying or upsetting" behavior or social stigma (*i.e.*, shunning) that Plaintiff fears. Should the statute be interpreted in that manner, Plaintiff would no longer have any constitutional claim because, as discussed *supra*, he would not have an injury and would not have standing to maintain this action. Absent a plaintiff with standing, this Court would be without power to decide the merits of the constitutional issue raised herein. Simply put, the constitutional question before this Court would be eliminated if the definition of the phrase as finally determined by the New York State courts encompasses the conduct Plaintiff identified. Moreover, various constructions by the New York State courts could alter this Court's analysis of the merits of the federal action with respect to the law's "burden on the [Second Amendment] right." *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 259 (2d. Cir. 2015) (internal quotation marks omitted).

The present case is typical of cases warranting *Pullman* abstention in that it "concern[s] the applicability of [a] challenged statute to a certain person or a defined course of conduct, whose resolution in a particular manner would eliminate the constitutional issue and terminate the

litigation." *Baggett v. Bullitt*, 377 U.S. 360, 376-77 (1964). Under these circumstances, the interests of comity and federalism favor a decision to await a state court interpretation which may well obviate the present action.

The Court recognizes Plaintiff's argument that abstention is inappropriate because it is being raised after litigating this case for more than three and a half years—a period that included extensive motion practice and discovery. However, while the Court is mindful of the maxim "justice delayed is justice denied," the Court is mindful also of the plain, speedy, and effective procedure for obtaining the needed final determination of state law from the New York State courts. Plaintiff was free to seek the necessary determination from the New York State courts during the pendency of this action, but he chose not to avail himself of that readily available remedy. Moreover, there is no danger of a statute of limitations expiring on the federal action, as the Court is retaining jurisdiction over this matter. The need for a definitive resolution of the meaning of "unwarranted harassment" from the New York State courts outweighs concern over any delay, increased cost, or piecemeal litigation. *See*, *e.g.*, *Coast Cities Truck Sales, Inc. v. Navistar Int'l Transp. Co.*, 912 F. Supp. 747, 785 (D.N.J. 1995) ("Although the abstention will cause further delay in this matter, which already has been pending for three years, neither party will suffer irreparable harm. . . . Moreover, in view of the other considerations, any inconvenience or delay is clearly outweighed by the need for an accurate construction of the statute before adjudicating its constitutionality."). In short, Plaintiff's concern that it is now too late for this Court to abstain is simply not a barrier to the Court's proper application of the *Pullman* doctrine.

The Court therefore abstains from exercising its jurisdiction to construe the subject statute but retains jurisdiction over any constitutional issue that remains after the New York State courts have finally determined the specific meaning of "unwarranted harassment" under §

400.00(5)(b)(iii). *See Chun v. State of New York*, 807 F. Supp. 288, 291-93 (S.D.N.Y. 1992). Rather than dismiss this action as the NYSOAG has requested,[7] the Court finds it must "stay its hand" on the federal constitutional issue until the New York State courts finally determine the meaning of the phrase used in the subject statute.

With respect to the NYSOAG's motion to preclude the expert testimony and opinions of Dr. English, where a court determines that consideration of an expert's testimony in support of or opposition to a motion for summary judgment is unnecessary to the determination of the summary judgment motion itself, it may deny the motion to preclude without prejudice. *See In re Scotts EZ Seed Litig.*, No. 12-CV-4727, 2017 WL 3396433, at *15 (S.D.N.Y. Aug. 8, 2017) ("[B]ecause deciding plaintiffs' *Daubert* motion . . . is not necessary for deciding the parties' cross-motions for summary judgment, plaintiffs' motion to preclude the testimony of [the experts] is denied without prejudice."); *Newell v. Ryobi Techs., Inc.*, No. 13-CV-8129, 2015 WL 4617184, at *1 (S.D.N.Y. Aug. 3, 2015) ("Because it is not necessary to decide the motion to preclude [the expert] in order to resolve the motion for partial summary judgment, the Court denies that motion without prejudice."); *Kendall v. Metro-N. Commuter R.R.*, No. 12-CV-6015, 2014 WL 1885528, at *4 (S.D.N.Y. May 12, 2014) (finding expert report unnecessary to resolution of summary judgment motion and holding that "it is not necessary to reach the *Daubert* challenge to [the] expert report in resolving the present motion."). Because the Court denies the dueling motions for summary

---

[7] The NYSOAG also asks the Court to dismiss this action under the theory of *Burford* abstention. *See Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). The Court is unconvinced that *Burford* abstention is an appropriate basis for dismissal of this action. Under the *Burford* abstention doctrine, deference is required only to the adjudicative proceedings of state regulatory bodies. *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989). This "action does not relate to any administrative action undertaken by the State of New York, much less an order or proceeding of a state agency." *State Farm Mut. Auto. Ins. Co. v. Schepp*, 616 F. Supp. 2d 340, 346 (E.D.N.Y. 2008). Moreover, while the NYSAOG argues that the statute at issue is a part of New York State's complex program to regulate and promote gun safety, it has not provided the Court with any viable administrative process through which Plaintiff could assert his challenge. *See*, *e.g.*, *Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 298 (E.D.N.Y. 2013).

16

judgment herein without prejudice on abstention grounds, it is unnecessary for the Court to rule on the NYSOAG's motion to preclude expert testimony. Accordingly, that motion, too, is denied without prejudice.

## CONCLUSION

Based upon the foregoing, the motions for summary judgment and to preclude the expert testimony of Dr. English are DENIED without prejudice. The Court abstains from determining the meaning of the phrase "unwarranted harassment" under N.Y. Penal Law § 400.00(5)(b)(iii), but retains jurisdiction over any constitutional issue that remains, if any, after the New York State courts have finally determined the specific meaning of that phrase. Consequently, this action is stayed pending a final determination of the state law issue described herein. The Clerk of the Court is respectfully directed to terminate the pending motion sequences at Docs. 98, 107, and 115, and administratively close this case, without prejudice to either party moving by letter motion to reopen the case within thirty days of the final conclusion of the state law proceedings referred to herein.[8]

**SO ORDERED:**

Dated:  New York, New York
        November 30, 2020

_____
PHILIP M. HALPERN
United States District Judge

---

[8] *See Zimmerman v. UBS AG*, No. 17-CV-4503, 2018 WL 4054860, at *6 (S.D.N.Y. Aug. 24, 2018), *appeal dismissed*, 789 F. App'x 914, 915-16 (2d Cir. 2020) ("The district court's administrative closure of the case does not constitute a final decision: there is no jurisdictional significance to [a] docket entry marking [a] case as 'closed,' which we will assume was made for administrative or statistical convenience.").

17